SCANLON, *Respondent,*
*v.*
HARTMAN et al, *Appellants.*
(No. 76-159 L, SC 25228)

579 P2d 851

Mel Kosta, Klamath Falls, argued the cause and filed a brief for appellants.

Arthur A. Beddoe of Beddoe & Hamilton, Klamath Falls, argued the cause and filed a brief for respondent.

Before Tongue, Presiding Justice, Bryson and Linde, Justices, and Gillette, Justice Pro Tempore.

GILLETTE, Justice Pro Tempore.

*Tongue, Presiding Justice, not participating.

**GILLETTE, J.,** Pro Tempore.

This personal injury action arose out of a collision between a truck and trailer (owned by defendant Mehrer and driven by defendant Hartman) and an automobile in which plaintiff was a passenger. Liability was conceded by the defendants and the only issue at trial was the amount of damages, which the jury assessed at approximately $20,000.

The sole question on appeal is the admissibility of a doctor's report written to plaintiff's first attorney in which the doctor detailed the plaintiff's complaints. We conclude that the letter/report was inadmissible, and reverse.

There is no dispute as to the relevant facts. Plaintiff was involved in the automobile accident on July 28, 1974. The following day, she went to see Dr. Zupan. She complained of headaches and pain in her upper arms and in the left side of her neck. Dr. Zupan examined plaintiff and recommended a course of treatment. He saw her on four or five different occasions during the months of July and August but, because her symptoms persisted, he referred her to an orthopedist, Dr. Balme, for treatment in September. Dr. Balme saw her several times over a two-and-a-half year period.

At trial plaintiff testified that a headache was the "predominant pain" she felt at the time of the accident, and that she continues to experience severe headaches on a regular basis—one or two a month. She also continues to experience pain in the upper arms and shoulder. Dr. Balme was then called as a witness. He testified as to the extent of her injuries, her symptoms and the treatment he prescribed for her. He stated he first saw her in September, 1974, at which time she complained of pain in her left shoulder and severe pain in her neck. He was unable to recall any complaints about headaches, but explained that he did not have a complete record about that first visit in his files. Dr. Balme saw plaintiff again in March and July,

[ 507 ]

1975, at which times she complained of continued pain in the shoulders and neck. He was under the impression that she did complain of headaches at the July examination, although he did not have those complaints recorded in the file. On cross-examination, the following exchange took place:

"[Defendants' attorney]: Now, you have seen Mrs. Scanlon on 4 occasions, as I note from your testimony. Going first to the headache situation; as I recall your testimony the first time that she had any complaints of headaches was on January 14th of this year; is that correct?

"A. That is as I have it recorded, that is right.

"Q. Had she mentioned headaches to you on previous visits would you not have noted them in your file?

"A. Well, I usually do; yes.

"Q. So, as far as your records show, her first complaint of headaches was January 14, 1977?

"A. Thats right."

With the date of the onset of plaintiff's headaches now an issue, plaintiff decided to call Dr. Zupan. Dr. Zupan testified that plaintiff had indeed complained of headaches on the first occasion he saw her. In giving this testimony, Dr. Zupan refreshed his memory by referring to a letter he had written, based on his medical records, in which he described his treatment of plaintiff. The letter was dated January 9, 1975, (four months after Dr. Zupan's last examination of plaintiff) and addressed to plaintiff's first attorney. Plaintiff then attempted to lay a foundation for independent admission of the letter as a business record. Defendant entered the following objection:

"[Defendants' attorney]: We're going to object to it Your Honor. It is not the best evidence. The Doctor has already testified. It is not proper evidence.

"[Plaintiff's attorney]: If the Court please, it is a part of the business records.

"[Defendants' attorney]: It is not the best evidence, Your Honor. The best evidence is the testimony of the Doctor.

"[The Court]: All right, we'll take this up outside the presence of the jury."

The letter was subsequently received into evidence.

■ Of course, an objection on the basis of the "best evidence rule" is incorrect. The "best evidence rule" is a rule confined to writings which (with exceptions) require the production of the original writing when the contents of the writing are in issue. McCormick, Evidence 560, § 229 (2d ed 1954). The proffered evidence here offered no "best evidence" issue.

We think, however, that the objection was broader than a mere best evidence objection, and should have been so understood by the trial judge. Counsel's statements, "the Doctor has already testified" and "the best evidence is the testimony of the Doctor" may be less than perfect examples of the advocate's art, but we think they fairly conveyed the fact that counsel meant to invoke not the limited "best evidence" rule, but the more basic primary/secondary evidence distinction. That is, the objection was properly directed at the introduction of secondary evidence (the written letter/report) after primary evidence (Dr. Zupan's oral testimony) had already been adduced. *See* 29 Am Jur2d, Evidence 511, § 449 (1967). So defendants argue on appeal.

■ Treating plaintiff's objection as having been properly preserved for our consideration, we find that the evidence is not admissible because the doctor had already testified. As was stated in *Manchester Assur. Co. v. Ore. R.R. Co.,* 46 Or 162, 79 P 60, 69 L.R.A. 475 (1905):

"The theory * * * [is] that a memorandum is but secondary evidence of the facts of which it speaks, the primary evidence being the knowledge of the witness, if he is able to testify truly as to the facts mentioned, or if he is enabled to testify from present recollection after having had his mind quickened by the memorandum—that is to say, of his own knowledge, independent of the memorandum; and it is only when this primary proof is

[ 509 ]

not available that resort may be had to the secondary * * *." 46 Or at 166-67.[1]

Plaintiff attempts to sustain the admission of the letter by arguing that the letter is separately admissible as a business record. It is not. At trial plaintiff's counsel inquired of Dr. Zupan:

"[Plaintiff's attorney]: Now, Doctor, you are, I understand you're testifying from a letter that you wrote to Mrs. Scanlon's prior attorney, is that correct?

"A. Yes.

"Q. And that was based upon your records and did you personally write the letter?

"A. I dictated it.

"Q. Did you sign the letter?

"A. I did.

"Q. Is that letter according to a part of your business records, Doctor?

"A. Yes."

The admissibility of business records is governed by the Uniform Business Records as Evidence Act, ORS 41.680-710. Under ORS 41.690:

"A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

The letter here does not qualify for admission as a business record. The "method and time" of its preparation are not such as to justify its admission. Nothing in the foundation which plaintiff attempted to lay indicates whether the letter itself was made in the regular

---

[1] *See also e.g., Highway Comm. v. Superbilt,* 204 Or 393, 409, 281 P2d 707 (1955), a condemnation action, in which we held that where defendant's expert witness had already orally testified as to his opinion of the costs of items which should be considered in setting the fair market value price of the property, it was prejudicial error to have admitted into evidence a written summary of that testimony. We noted that such summaries are "a far cry from those summaries of long accounts contained in original books of entry which are sometimes admissible." 204 Or at 409.

course of business. The phrase "regular course of business" means the records must be made *regularly* in addition to being incident to a business. *See Sullivan et al v. Carpenter,* 184 Or 485, 491-92, 199 P2d 655 (1948). Thus isolated memoranda (such as correspondence) are generally considered inadmissible as business records. *See Laughlin, Business Entries and the Like,* 46 Iowa L Rev 276, 286 (1961).

■ Having determined that admission of the letter was error, we now turn to the question of prejudice. To warrant reversal the ruling of the trial court must be not only erroneous, but prejudicial. *Edwards, Guardian v. Hoevet,* 185 Or 284, 200 P2d 955 (1949).

■ The sole issue at trial was the amount of damages. The existence and severity of plaintiff's headaches would be a material factor in the jury's assessment of the amount of damages. Dr. Balme testified that he had no record of plaintiff having complained about headaches until his final visit with her in January, 1976, almost 18 months after he first saw her. This testimony could have created an implication that plaintiff did not suffer from headaches until a year-and-a-half after the accident. Accordingly, Dr. Zupan's testimony that plaintiff complained of headaches immediately after the accident was significant. To reinforce and emphasize Dr. Zupan's testimony with a written record in the jury room was prejudicial. The letter may have been a written reminder that unduly weighted the jury's assessment of damages.

The admission of the letter was error warranting reversal.

Reversed.