Argued and submitted June 9,
reversed and remanded July 14, 1980

In the Matter of the Refusal
to Submit to a Breath Test by:
LEPIRE,
*Respondent,*
*v.*
MOTOR VEHICLES DIVISION,
*Appellant.*

(No. 78-10-396, CA 15929)

613 P2d 1084

W. Benny Won, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were James A. Redden, former Attorney General, and Walter L. Barrie, Solicitor General, Salem.

James D. Fournier, Mt. Angel, waived appearance for respondent.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

CAMPBELL, J.

## CAMPBELL, J.

Petitioner's driver's license was suspended by the Motor Vehicles Division (Division) after petitioner refused to submit to a chemical breath test following his arrest for driving while under the influence of intoxicating liquor. On appeal of the suspension to circuit court, the court granted petitioner's motion for a directed verdict. Pursuant to ORS 19.010 and 19.020, the Division appeals from the granting of a directed verdict, assigning error to that ruling. The Division also assigns error to the trial court's refusal to admit into evidence, under ORS 41.690, the custody report made by the arresting officer. We reverse and remand.

We first address the question whether the trial court erred in granting petitioner's motion for directed verdict. At trial, petitioner admitted that the arresting officer warned him that a consequence of his refusal to take a breathalyzer test would be the suspension of his license for 120 days. ORS 487.805(2)(a); 482.540(1). He also testified, however, that the officer did not inform him of his right to an independent chemical test, his right to an administrative hearing, or his right to a trial in the circuit court. ORS 487.805(2)(a) and (b); 482.540 et seq. This testimony was uncontradicted. The trial court ruled that there was no issue as to petitioner's credibility and that the jury could not reasonably find from the evidence that the arresting officer properly advised petitioner of his rights under the above-cited statutes. As a consequence, administrative suspension of petitioner's license was reversed. *State v. Osburn,* 13 Or App 92, 96, 508 P2d 837 (1973).

The leading case in Oregon on the question of whether a jury may give conclusive effect to uncontradicted testimony of the proponent of a fact in issue is *Rickard v. Ellis,* 230 Or 46, 368 P2d 396 (1962). In *Rickard v. Ellis,* the court, quoting from *Ferdinand v. Agricultural Insurance Co.,* 22 NJ 482, 494, 126 A2d 323 (1956), stated:

" * * * Where men of reason and fairness may entertain differing views as to the truth of testimony, whether it be uncontradicted, uncontroverted or even undisputed, evidence of such a character is for the jury. . . . [citation omitted]. But when the testimony of witnesses, interested in the event or otherwise, is clear and convincing, not incredible in the light of general knowledge and common experience, not extraordinary, not contradicted in any way by witnesses or circumstances, and so plain and complete that disbelief of the story could not reasonably arise in the rational process of an [ordinarily] intelligent mind, then a question has been presented for the court to decide and not the jury. . . . [citation omitted]." 230 Or at 51.

The opinion in *Ferdinand* further stated:

"[W]here the uncontradicted testimony of a witness, interested or otherwise, is unaffected by any conflicting inferences to be drawn from it and is not improbable, extraordinary or surprising in its nature, or there is no other ground for hesitating to accept it as the truth, there is no reason for denying the verdict dictated by such evidence. . . . " [citations omitted]. 22 NJ at 498, 126 A2d at 332.

*See Rogers v. Hill,* 281 Or 491, 576 P2d 328 (1978).

Ample grounds exist here for hesitating to accept petitioner's testimony as the complete truth. Petitioner's own testimony suggests that his memory of the events in question may be faulty or incomplete. Although petitioner testified that he was never asked to sign a form indicating that he had been informed of his rights, he admitted that he "couldn't swear by it" and that it was possible he was asked to sign such a form. Petitioner also stated that he probably told the officer he had drunk a six-pack of beer. He had been up all of the preceding day and night, so a jury might reasonably conclude that fatigue at the time of the incident rendered petitioner's recall of the events less believable.

Further, a reasonable person could conclude from petitioner's testimony that the events took place in an atmosphere of emotional tension such that a participant might recall events in a manner consistent with his own interest. *See Rogers v. Hill, supra,* 281 Or at 496.

■ We conclude that a jury would have been entitled to disbelieve petitioner's version of the events. Accordingly, it was error for the trial court to take the issue from the jury.

Since the evidentiary issue is likely to arise on retrial, we now turn to that question. The Division's key witness was to have been Officer Wallin of the Canby Police Department, the arresting officer. Between the time of arrest and trial, however, Officer Wallin died. In lieu of the officer's testimony, the Division offered into evidence Officer Wallin's custody report, which detailed the circumstances of petitioner's arrest and refusal to submit to a chemical breath test. The report is largely made up of Officer Wallin's first-hand observations, as well as some statements by petitioner that would be admissible under various exceptions to the hearsay rule. The Division offered the report under ORS 41.680 to 41.710, Oregon's version of the Uniform Business Records as Evidence Act, to prove (a) that at the time petitioner was requested to submit to a breath test, the officer had reasonable grounds to believe that petitioner had been driving under the influence of intoxicants, ORS 487.805(3)(b), and (b) that petitioner was fully advised of his rights under the Implied Consent Law, ORS 487.805(3)(d). The trial court refused to admit the report into evidence for these purposes.

ORS 41.690 provides:
"A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the

[71]

time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

The term "business" as used in this statute "shall include every kind of business, profession, occupation, calling or operating of institutions, whether carried on for profit or not." ORS 41.680.

■ ■ Police reports are admissible as "business records" when they satisfy the requirements of ORS 41.690.[1] *See United States v. Smith,* 521 F2d 957 (D.C. Cir. 1975); *Bowman v. Kaufman,* 387 F2d 582 (2d Cir. 1967); *United States v. Burruss,* 418 F2d 677 (4th Cir. 1969); *United States v. Halperin,* 441 F2d 612 (5th Cir. 1971); *United States v. Graham,* 391 F2d 439 (6th Cir.), *cert denied,* 393 US 941, 89 S Ct 307, 21 L Ed 2d 278 (1968); *United States v. Parker,* 491 F2d 517 (8th Cir. 1973), *cert denied,* 416 US 989, 94 S Ct 2396, 40 L Ed 2d 767 (1974); *United States v. Wolosyn,* 411 F2d 550 (9th Cir. 1969); *Taylor v. Centennial Bowl, Inc.,* 65 Cal 2d 114, 52 Cal Rptr 561, 416 P2d 793 (1966); *People v. Aguilar,* 16 Cal App 3d 1001, 94 Cal Rptr 492 (1971); *Johnson v. State,* 253 A2d 206 (Del. 1969); *State v. Bradley,* 17 Wash App 916, 567 P2d 650 (1977).[2] *Cf. State v. Roisland,* 1 Or App 68, 459 P2d 555 (1969) (county jail is a "business" within meaning of ORS 41.690).

Officer Brad Baker of the Canby Police Department, the custodian of documents and reports, testified as to the identity of the report and mode of its preparation. He stated that any time a person is taken to jail, the arresting officer is required by the police

[1] This case, arising under the Implied Consent Law, is civil in nature. *See Burbage v. Dept. of Motor Vehicles,* 252 Or 486, 450 P2d 775 (1969); *Stratikos v. Dept. of Motor Vehicles,* 4 Or App 313, 477 P2d 237, 478 P2d 654, *rev den* (1971). Therefore, Confrontation Clause issues which might otherwise arise from the admission of police records, *see, e.g., United States v. Smith,* 521 F2d 957, 965-66 and n. 20 (D.C. Cir. 1975), are not involved. *See also State v. Partee,* 32 Or App 117, 573 P2d 751, *rev den* (1978).

[2] The state and federal statutes under which these and other cases cited in this opinion were decided are, for the purposes of this opinion, indistinguishable from ORS 41.690.

department to complete a custody report before the end of his shift and hand it in to be corrected by either the chief or lieutenant. Thus, the report is prepared as a matter of routine. Officer Baker also stated that the reports are prepared not only so the department has a record of all actions taken by the department and its officers, but also so that an arresting officer may have something from which to refresh his memory for trial purposes. From notations on Officer Wallin's report Officer Baker determined that it was prepared and filed soon enough after petitioner's arrest so that the report was reviewed by the lieutenant on the next shift.

Officer Wallin's report thus satisfies the statutory requirements that it be a "record of an act, condition or event," that the custodian testify as to "its identity and the mode of its preparation," and that it be prepared "at or near the time of the act, condition or event." ORS 41.690. The matter stated in the report is highly relevant to the issues at trial.[3]

■ ■ The question remains whether the report "was made in the regular course of business." ORS 41.690. The mere fact that records are routinely prepared does not satisfy this requirement. *Palmer v. Hoffman,* 318 US 109, 63 S Ct 477, 87 L Ed 645 (1943). The statutory phrase "regular course of business" is a term of art which came into the statute "saturated with history." *Hoffman v. Palmer,* 129 F2d 976, 984 (2d Cir. 1942), *aff'd, Palmer v. Hoffman, supra:*

" * * * Those words had come to be a short-hand expression or symbol for a doctrine, the essence of which is the reliance on records where the circumstances in which they were made furnish sufficient

---

[3] This case is distinguishable from *Miller v. Lillard,* 228 Or 202, 364 P2d 766 (1961), and *Snyder v. Portland Traction Company,* 182 Or 344, 185 P2d 563 (1947), where reports by a police officer and a state livestock officer were held not admissible as business records because the officers had no personal knowledge of the matters contained in the reports. *See Johnson v. Lutz,* 253 NY 124, 170 NE 517 (1930); *Wynn v. Sundquist,* 259 Or 125, 485 P2d 1085 (1971).

[73]

checks against inducements to misstate to make them trustworthy, give them 'some badge of truthfulness.' " 129 F2d at 980-81.

It is "the character of the records and their earmarks of reliability * * * acquired from their source and origin and the nature of their compilation," *Palmer v. Hoffman, supra,* 318 US at 114, that is the test of whether records are prepared in the "regular course of business." The basis of the rule allowing business records into evidence as an exception to the hearsay rule is "[t]he probability of trustworthiness of records because they were routine reflections of the day to day operations of a business." *Ibid.* As stated in *W.D. Rubright Co. v. International Harvester Co.,* 358 F Supp 1388, 1403 (W.D. Pa. 1973):

> " * * * All the exceptions to the hearsay rule are based on the belief that something about the out-of-court statement insures or tends to insure its truthfulness, and therefore the jury need not evaluate the maker's demeanor for signs of credibility. The Business Records exception to the hearsay rule is in keeping with this theory of inherent believability. Giant businesses involve many departments which must interact as well as deal with outsiders over long periods of time. Precise communication and accurate records are extremely important if these interactions are to succeed. A company cannot lie to itself on a day-to-day basis and survive because business records serve as the corporation's memory."

Similarly, McCormick has observed:

> "The exception is justified on grounds analogous to those underlying other exceptions to the hearsay rule. Unusual reliability is regarded as furnished by the fact that in practice regular entries have a comparatively high degree of accuracy (as compared to other memoranda) because such books and records are customarily checked as to correctness by systematic balance-striking, because the very regularity and continuity of the records is calculated to train the record-keeper in habits of precision, and because in actual experience the entire business of the

nation and many other activities constantly function on reliance upon entries of this kind." McCormick, Evidence § 306 at 720 (1972 ed.).

*See LaPorte v. United States,* 300 F2d 878, 880 (9th Cir. 1962); 5 Wigmore, Evidence § 1522 (1974).

The purpose for which police records are sought to be introduced frequently determines whether a court will find in those records the requisite trustworthiness for admissibility as business records. For instance, in prosecutions for narcotics violations notations made by government agents on envelopes in which narcotics purchased from defendants have been placed, which describe the circumstances of the transaction, have been admitted as business records for the limited purpose of proving the chain of custody of the evidence. *See United States v. Parker,* 491 F2d 517 (8th Cir. 1973), *cert denied,* 416 US 989, 94 S Ct 2396, 40 L Ed 2d 767 (1974); *People v. Aguilar,* 16 Cal App 3d 1001, 94 Cal Rptr 492 (1971). Police reports have also been admitted to prove or disprove a defendant's alibi. In *Johnson v. State,* 253 A2d 206 (Del. 1969), the defendant, who was charged with larceny of a truck, relied on an alibi defense, asserting that he had been home at the time of the crime. The court held admissible under Delaware's version of the Uniform Business Records as Evidence Act a police record of a routine traffic stop made shortly before the time of the crime, which showed that a man who identified himself as the defendant was riding in the vehicle stopped. To the same effect is *Hale v. State,* 252 Ark 1040, 483 SW 2d 228 (1972), in which the court held that a prisoner record kept in the regular course of business at a county jail was admissible as a business record when offered by the defendant to prove his alibi that he had been in jail at the time of the crime of which he was accused.

■  Police records offered to show the fact that a crime was reported have been held admissible as business records. *See United States v. Smith,* 521 F2d

957 (D.C. Cir. 1975) (dictum); *United States v. Burruss,* 418 F2d 677 (4th Cir. 1969); *United States v. Wolosyn,* 411 F2d 550 (9th Cir. 1969); *Taylor v. Centennial Bowl, Inc.,* 65 Cal 2d 114, 52 Cal Rptr 561, 416 P2d 793 (1966) (to show defendant's knowledge that violent acts regularly occurred on its premises); *State v. Bradley,* 17 Wash App 916, 567 P2d 650 (1977) (to establish flaw in story of defense witness who testified she saw defendant at site of police investigation of purse-snatching far from the location of the robbery with which the defendant was charged, at the time of the robbery). Police records may also be admitted as business records for impeachment of witnesses. In *United States v. Smith, supra,* the court held a police record admissible when offered by a criminal defendant to impeach the credibility of a prosecution witness by showing inconsistencies between the witness' testimony and the police report of the witness' original account of the crime. *See also LaPorte v. United States,* 300 F2d 878 (9th Cir. 1962) (admission under federal business records statute of Selective Service document with notation by civilian employer that defendant "did not report" for required civilian employment, to prove that fact, where report was "precisely the kind of contemporaneous record of events, systematically prepared by an agency for its own use and relied upon by it in the performance of its functions, which experience has shown to be trustworthy, and which therefore falls within the purpose and scope of the business records exception to the hearsay rule codified in [the federal statute]" (300 F2d at 880)).

■ A common distinguishing characteristic of these cases is that the party offering the records had not prepared those records with a view toward their use in litigation to prove the issue for which they were offered. Records prepared in anticipation of litigation lack the indicia of trustworthiness central to the rationale of the "business records" exception to the hearsay rule. *Palmer v. Hoffman, supra; United States v. Smith, supra; Hartzog v. United States,* 217 F2d 706

(4th Cir. 1954); *United States v. Ware,* 247 F2d 698 (7th Cir. 1957); McCormick, *supra,* § 308 at 724 n. 49. The leading case on this point is *Palmer v. Hoffman, supra,* a negligence action for personal injuries in which the defendant railroad attempted to introduce into evidence the accident report of the engineer of the train which recited his version of the circumstances of the accident. The United States Supreme Court held that the statement was properly excluded, stating:

"The engineer's statement which was held inadmissible in this case falls into quite a different category. It is not a record made for the systematic conduct of the business as a business. An accident report may affect that business in the sense that it affords information on which the management may act. It is not, however, typical of entries made systematically or as a matter of routine to record events or occurrences, to reflect transactions with others, or to provide internal controls. The conduct of a business commonly entails the payment of tort claims incurred by the negligence of its employees. But the fact that a company makes a business out of recording its employees' versions of their accidents does not put those statements in the class of records made 'in the regular course' of the business within the meaning of the Act. If it did, then any law office in the land could follow the same course, since business as defined in the Act includes the professions. We would then have a real perversion of a rule designed to facilitate admission of records which experience has shown to be quite trustworthy. Any business by installing a regular system for recording and preserving its version of accidents for which it was potentially liable could qualify those reports under the Act. The result would be that the Act would cover any system of recording events or occurrences provided it was 'regular' and though it had little or nothing to do with the management or operation of the business as such. Preparation of cases for trial by virtue of being a 'business' or incidental thereto would obtain the benefits of this liberalized version of the early shop book rule. The probability of trustworthiness of records because they were routine reflections of the day

to day operations of a business would be forgotten as the basis of the rule." 318 US at 113-14, 63 S Ct at 480, 87 L Ed at 649-50.

   *United States v. Ware, supra,* presents facts analogous to those in the instant case. *Ware* involved a prosecution for acquisition, concealment, and sale of heroin. At trial the government introduced over defendant's objection envelopes in which heroin purchased from the defendant by narcotics agents was placed and sent to a government chemist for analysis. On these envelopes were notations made by the agents concerning the circumstances of the purchases. The court held these notations were not admissible under the federal business records statute to prove the circumstances of the purchases, stating:

> "[E]ven if memoranda such as the ones in question are regularly prepared by law enforcement officers, they lack the necessary earmarks of reliability and trustworthiness. Their source and the nature and manner of their compilation unavoidably dictate that they are inadmissible under [the statute]. They are also subject to the objection that such utility as they possess relates primarily to prosecution of suspected law breakers, and only incidentally to the systematic conduct of the police business." 247 F2d at 700.

*Cf. Clainos v. United States,* 163 F2d 593, 595-96 (D.C. Cir. 1947) ("While the Police are, of course, directly concerned with convictions for crime, and in the ordinary course of their business properly keep records of such convictions for their own information, such notations are not the sort of record which is admissible under [the federal statute]. Such notations are relevant to and useful in the 'business' of the Police, but the recordation of convictions is not itself part of their 'business.' ") McCormick has recognized that "where the only function that the report serves is to assist in litigation or its preparation, many of the normal checks upon the accuracy of business records are not operative," noting that preparation for litigation may

provide "a motive and opportunity to falsify the record." McCormick, *supra,* § 308 at 724 and n. 49.

■ The custody report offered into evidence here was not made in the "regular course of business" within the meaning of ORS 41.690. It is not the type of systematic entry subject to regular examination, relied upon because of its customary accuracy, that justifies the business records exception to the hearsay rule. The report undoubtedly functions in part as a memorandum of the day-to-day activities of the department. It is the report's utility as an aid in litigation, however, which is the more significant basis for its preparation. Consequently, the "necessary earmarks or reliability and trustworthiness" are absent. *United States v. Ware, supra,* 247 F2d at 700.

For the reasons stated above, we also conclude that "the sources of information, method and time of preparation" were not "such as to justify [the report's] admission." ORS 41.690. Thus, the report was properly excluded by the trial court for the purposes herein offered.

Reversed and remanded.