Argued and submitted February 5, affirmed September 9, 1981,
petition for rehearing allowed, reversed and remanded
for new trial January 26, 1982 (292 Or 388, 639 P2d 1264)

# STATE OF OREGON,
*Respondent,*

*v.*

# RANFORD OWEN STRINGER,
*Petitioner.*

(No. 79-6-323, CA 16904, SC 27482)

633 P2d 770

Charles D. Colett, Oregon City, argued the cause for petitioner. With him on the briefs was Ronald D. Thom, Oregon City.

Karen H. Green, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

James M. Callahan, Portland, filed a brief amicus curiae on behalf of Association of Defense Counsel.

Michael R. Shinn, Salem, filed a brief amicus curiae on behalf of Oregon Trial Lawyers Association.

Before Denecke, Chief Justice, Tongue, Lent, Linde, Peterson and Tanzer, Justices.

DENECKE, C. J.

Tongue and Lent, JJ., filed concurring opinions.

## DENECKE, C. J.

The defendant, while driving his pickup, struck and killed a pedestrian for which he was convicted of criminally negligent homicide. The Court of Appeals affirmed. 49 Or App 51, 618 P2d 1309 (1980). We granted review to consider whether proffered evidence by a traffic accident reconstruction expert, which the trial court would not admit into evidence, should have been received.

On a December night, two high school girls were driving home on a paved highway near Canby. They saw cows on the road; they stopped and told people in a nearby house about the cows. The girls were walking back to their car when the deceased girl was struck by the defendant's pickup which came up from behind. A crucial question was the location of the decedent when she was struck. Jacqueline, the companion of the decedent, testified they were walking on the left side of the pavement facing oncoming traffic and when they saw the lights of the pickup coming up from behind, Jacqueline went over to the left gravel shoulder and the decedent was directly to her right. The inference from her testimony is that this was decedent's location when she was hit. Jacqueline also testified that when the pickup went ahead of them after going by it was in the wrong lane; that is, the left lane, but it went into the right lane before it stopped.

Defendant told the first officer who came on the scene soon after the accident that he did not know where the collision with the girl occurred. There was evidence that the defendant had been drinking alcoholic beverages. Defendant later told another officer that the girls were walking in the middle of the road. There were no observable tire marks evidencing the course of the vehicle. The girl's body was found off the left edge of the highway and her shoes were found together a short distance from the left edge of the paved portion of the highway.

The defendant called Mr. Talbott as an expert in the area of accident reconstruction. The witness testified he was a consulting engineer, registered as a professional engineer qualified in both civil and mechanical engineering, and since 1960 he had done accident reconstruction for

over 2,000 motor vehicle accidents. No objection was made to his qualification as an expert. The trial court apparently found him to be generally qualified in this field and the evidence supported such a finding.

He first visited the scene of the death about nine months after the death. He made measurements and had available two diagrams of the accident scene prepared by police officers Schnoor and Brown. Schnoor's included the position of the body and shoes. Talbott also had available photographs of the scene taken the day after the accident, photographs of the vehicle defendant was driving, taken before any repairs after the accident, and measurements of the damaged portions of the vehicle. He was also informed where small pieces of broken glass were found on the victim, her height and weight and her injuries. He assumed a speed of 40-45 miles per hour which was the defendant's testimony of his speed and the only evidence on the point. He was also informed that as the pickup passed Jacqueline something had hit her upper right arm. With this information and from the place where the body was supposedly found, he "projected backward the probable flight path of the girl's body to the roadway."

He computed that the victim's body had "departed from the collision at" an angle of 46.976 degrees; that is, the angle from the center line of the road to the path of the body through the air.

When the witness was asked where the point of impact occurred, the state objected and after lengthy argument the objection was sustained. On an offer of proof the witness testified that when the victim was struck she was nine inches to the right of the center line; that would have been in the defendant's proper lane. He further testified on the offer of proof that it was impossible that the victim could have been off the left side of the paved portion of the highway or near the left edge of the paving when she was struck.

We have decided that the opinion testimony of an "aircraft accident reconstruction analyst" is admissible. *Myers v. Cessna Aircraft*, 275 Or 501, 510, 553 P2d 355 (1976). We have also held that the testimony of a physicist,

who had no personal knowledge of the facts of the accident, on the significance of the location of debris from an automobile collision should have been admitted. *Carter v. Moberly,* 263 Or 193, 501 P2d 1276 (1972).

However, we have decided in three cases that an expert with no personal knowledge of the facts could not give an opinion on certain issues concerning the physical facts of an automobile collision such as the point of impact. *Thomas v. Dad's Root Beer, Etc.,* 225 or 166, 168-169, 356 P2d 418, 357 P1d 418 (1960); *Marshall v. Martinson,* 268 Or 46, 518 P2d 1312 (1974), and *Urbanski v. Johnson,* 283 Or 1169, 581 P2d 948 (1978).

■ In deciding these cases we did not state any specific principles governing the admission of opinion testimony by experts who had no personal knowledge of the accident. We conclude that the admissibility of such evidence, including accident reconstruction evidence, should be judged by the same rules that are used in deciding the admissibility of the opinion evidence of experts on other issues.

■ One of the rules is that an expert's opinion must be based upon the facts in evidence or upon facts within the personal knowledge of the expert. *Harpole v. Paeschke Farms, Inc.,* 267 Or 592, 595, 518 P2d 1023 (1974); *Peterson v. Schlottman,* 237 Or 484, 487, 392 P2d 262 (1964); *Furrer v. Talent Irrigation District,* 258 Or 494, 516-517, 466 P2d 605 (1971). *Cf. State Highway Com. v. Arnold,* 218 Or 43, 341 P2d 1089, 343 P2d 1113 (1959); and *Wulff v. Sprouse-Reitz Co., Inc.,* 262 Or Or 293, 304-310, 497 P2d 766 (1972).

We stated the reason for the rule in *Devine v. Southern Pacific Co.,* 207 Or 261, 295 P2d 201 (1956):

> "An expert must state his opinion upon facts presented in the record, for the reason that a jury must determine the weight to be given the opinion, and, without knowledge of what facts the expert accepts as true, an evaluation of his opinion is impossible. * * *" 207 Or at 273.

■ In the present case the expert, Talbott, based his opinion in part on the information contained on the diagram prepared by Officer Schnoor. That diagram was marked for identification but was never offered or received in evidence, and thus was never delivered to the jury for

their consideration. That diagram had the only information used by the expert purporting to precisely mark the location where the victim's body was found. That location was an important element upon which the expert relied in forming his opinion as to the victim's location at the time she was struck by the defendant's car.

One other witness, Davis Hart, who initially found the victim after the accident, testified where he found the victim and marked that place on a diagram received in evidence. The record does not reveal that his testimony or the diagram he marked was considered by Mr. Talbott. Without having Officer Schnoor's diagram available for examination, the jury could not compare the officer's marked location of the victim's body with the testimony of Hart. Therefore the jury did not have available evidence from which they could determine whether Schnoor's location and the expert's opinion based upon Schnoor's location were credible.

Material information which was relied upon by the expert in forming his opinion was not in evidence for consideration by the jury, and therefore the trial court was correct in excluding the proffered opinion of the expert on the location of the victim at the time she was struck.

Affirmed.

**TONGUE, J.,** specially concurring.

I concur in the result reached by the majority in this case, but for the reasons stated by this court in *Marshall v. Martinson,* 268 Or 46, 518 P2d 1312 (1974), as cited by the majority (291 Or at 531). In that case this court held, as in this case, that the objection to the testimony by the expert witness was properly sustained, but upon the ground that:

"* * * under the facts of this case the trial judge could properly find that there were so many varying factors involved in the problem presented by this question that the opinion of an expert witness in answer to that question would indeed have been 'speculative,' * * *." 268 Or at 56.

In my opinion, even if the diagram referred to by the majority had been in evidence, the opinion of the expert witness was too "speculative" to be admissible.

**LENT, J.,** concurring.

I concur in the result, and I concur that the admissibility of the kind of evidence with which we are here concerned should be judged by the same rules as are used generally with respect to the admissibility of opinion evidence of witnesses who are expert in a given field. I concur with what I believe the majority is trying to express by the following statement:

> "One of the rules is that an expert's opinion must be based upon the facts in evidence or upon the facts within the personal knowledge of the expert."

I do not concur with the statement as written.

An expert's opinion amounts to the conclusion which he draws from certain facts that he assumes to exist for the predicate of his conclusion. Whether those facts actually exist is for the trier of fact to determine. That determination is dependent upon whether there is evidence from which those facts could be found to exist by the trier of fact.

If there is evidence in the record from which the trier of fact could find the existence of a certain fact, the expert may assume that fact to exist. If the existence of that fact is necessary to the validity of the opinion expressed by the expert, but the trier of fact fails to find that the fact exists, the trier of fact should disregard that opinion.

There is no such thing as a "fact" within the personal knowledge of the expert. There may be evidence within the personal knowledge of the expert, from which he infers the existence of a fact, but his inference may be found by the trier of fact to be erroneous just as in the case of the inferences to be drawn from the evidence within the personal knowledge of any other witness.

For example, a witness may testify that he saw an object lying on the ground a certain distance and direction away from a certain fire hydrant. That testimony is evidence from which the trier of fact may find that the object was in that location, i.e., that the fact exists that the object was in that location. On the other hand, for any number of reasons the trier of fact might find that the fact does not

exist. For example, the trier of fact might find that other evidence is more believable as to the location of the object or that the witness who testified to the location was not credible.

Now, it may be that the witness who testifies to the location of the object in the above example is the very witness who is being asked for an expert opinion based upon the location of the object. If it be assumed that he is testifying truthfully, what it is that is in his personal knowledge is what he believes he perceived through his senses. That is not necessarily "fact"; it is only evidence from which the existence of "fact" can be established. The trier of fact may accept or reject that location as fact, just as in the case of any other witness.

In expressing an opinion, an expert may assume to be in existence any fact which could be found to exist by the trier of fact from evidence in the record. If there is no evidence, from the expert or any other source, from which the existence of a given fact could be found, the expert's opinion may not be received, if a necessary predicate of that opinion is the existence of that very fact.

In the case at bar, there was no evidence in the record to establish a basis for the trier of fact to find that the location of the deceased's body was that upon which the expert witness predicated his opinion; therefore, his opinion evidence could not be received over objection.