Argued and submitted March 26, affirmed on appeal and on cross-appeal September 5, reconsideration denied October 19, petition for review dismissed December 5, 1984
(298 Or 335)

OSBORNE,
*Respondent - Cross-Appellant,*

*v.*

INTERNATIONAL HARVESTER COMPANY,
*Appellant,*

*and*

MULTNOMAH COUNTY,
*Respondent - Cross-Respondent.*

(A7908-03933; CA A28412)

688 P2d 390

E. Joseph Dean, Portland, argued the cause for appellant. With him on the briefs was Stoel, Rives, Boley, Fraser and Wyse, Portland.

Burl L. Green, Portland, argued the cause for respondent - cross-appellant. On the brief were Robert J. Neuberger, and Green, Griswold & Neuberger and Larson & Sharp, Portland.

John B. Leahy, County Counsel, argued the cause for respondent - cross-respondent. With him on the brief was Noelle Mair, Assistant County Counsel, Portland.

Before Gillette, Presiding Judge, and Warden and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

.

## VAN HOOMISSEN, J.

This is a products liability case. Plaintiff sued Multnomah County and International Harvester (IHC) for personal injuries. A jury returned a verdict in her favor against IHC. IHC appeals. It contends that the trial court erred in admitting certain evidence and in denying the admission of other evidence, in instructing the jury and in denying its motion for a directed verdict. Plaintiff cross-appeals from the judgment for the county. She contends that the trial court erred in excluding evidence that was objected to by the county and in admitting evidence offered by the county. She argues that any reversible error resulting from the county's trial conduct requires a new trial as to *all* parties and *all* issues. We affirm.

Ken Pinheiro, a county employe, was driving a county-owned truck that was involved in a collision with a passenger vehicle driven by plaintiff. The principal issue at trial was whether a fractured main leaf spring on the truck caused the collision. The evidence was in conflict. Plaintiff contended that the spring failed because of inclusions, or impurities, in the metal, which constituted a manufacturing defect. IHC contended that the spring failed because of the impact of the collision and that it was the county's negligence that proximately caused the accident.

■ We first consider whether the trial court erred in excluding accident reconstruction evidence concerning the truck's speed. IHC offered that evidence through its expert, Moffatt, who testified in an offer of proof that, based on standard formulas and facts concerning the road surface, grade, skidmarks and weight distribution of the truck, the truck was travelling 37 mph when it began skidding. IHC argues that that evidence was admissible under the rule explained in *State v. Stringer*, 291 Or 527, 633 P2d 770 (1981), *rev'd on rehearing* 292 Or 388, 639 P2d 1264 (1982),[1] *i.e.*, that such evidence is "judged by the same rules that are used in deciding the admissibility of opinion evidence on other issues." Plaintiff argues that *Stringer* should not be applied

---

[1] In excluding the evidence, the trial court relied on *State v. Stringer*, 49 Or App 51, 618 P2d 1309 (1980), which was subsequently reversed. *State v. Stringer*, 291 Or 527, 633 P2d 770 (1981), *rev'd on rehearing* 292 Or 388, 639 P2d 1264 (1982).

retroactively and that, in any event, the evidence was not admissible. She also argues that, even if the evidence was excluded erroneously, any error was harmless. Assuming that the trial court erred, we conclude that any error was harmless.[2] *See Kuffel v. Reiser,* 268 Or 152, 519 P2d 365 (1974); *Carter v. Moberly,* 263 Or 193, 206, 501 P2d 1276 (1972).

■     The precise speed of the truck was not a central issue in the case. Pinheiro testified that, as he passed an intersection, he slowed the truck, put it into third gear and then accelerated, that he was going faster than 30 mph but less than 37 mph and that he then lost control of the truck. When he locked the truck's brakes, it skidded into the oncoming traffic lane. Pinheiro was unable to move the truck, because the driveline had pulled away from the differential. As he was climbing out of the truck, he said, plaintiff's car came around a corner and hit the truck. The jury was told that the truck could not be travelling slower than 30 mph nor faster than 37 mph in third gear. The jury also heard other evidence from which it could reasonably infer that Pinheiro was driving unsafely, because it was unsafe to go around the curve where the accident happened at over 30 mph. Pinheiro admitted that he was driving over 30 mph. Moffatt testified before the jury that, if Pinheiro's version of what happened was not correct, the most likely cause of the accident was that he lost control and the truck skidded into plaintiff, who could not avoid the collision. In short, the exclusion of the evidence was, at most, harmless error.

■     IHC next contends that the trial court erred in admitting a report from Evanson, plaintiff's metallurgical expert. He testified on direct examination that the main leaf spring cracked because of impurities in the metal at the time the spring was cast and that, over time, the defect worsened. His report was not offered by plaintiff. During cross-examination IHC's counsel read a major portion of Evanson's report to the jury.[3] Later, the county offered the report in evidence. The following colloquy then occurred:

---

[2] IHC argues that, because this case was tried before the new evidence code took effect, we must presume that evidentiary error is prejudicial. *See* OEC 103(1); *Elam v. Soares,* 282 Or 93, 102, 577 P2d 1336 (1978). We disagree. We apply the standard of OEC 103(1), because its application is feasible and works no injustice. *See* Or Laws 1981, ch 892, § 101; *Van Gordon v. PGE Co.,* 295 Or 811, 813, 670 P2d 1026 (1983).

[3] IHC's counsel read the following from Evanson's report:

"MR. LEAHY: I will offer 96, Your Honor.

"MR. CHADSEY: We would object on the grounds of hearsay, Your Honor.

"MR. LEAHY: It was read to the jury, Your Honor, by the witness at Mr. Chadsey's request.

"THE COURT: Mr. Green, do you have anything to say about this?

"MR. GREEN: I have no objection.

"THE COURT: Well, ordinarily —

"MR. CHADSEY: I had him read a paragraph of the report, Your Honor.

"MR. LEAHY: I will offer that paragraph that he read.

"THE COURT: Wait a minute.

"MR. LEAHY: Excuse me, Your Honor.

"THE COURT: Isn't the rule, when part of the document is made admissible, the entire document becomes admissible?

---

"I am now satisfied that the sequence of failure which I developed earlier is substantially correct. You will recall that this suggested that the driver first applied the brakes in response to a change of steering response caused by a relatively slow loss of air from the left front tire. This brake application created a tensile stress in the left rear spring and the spring separated close to the front eye, allowing the whole assembly of spring and axle to move several inches to the rear. This movement, although it would have caused the driver considerable difficulty, should not have resulted in complete loss of control. In fact, however, control was lost because the rear attachment bracket for this spring had a gross porosity in the casting and it too fractured. Thus, the axle movement was allowed to become so large that the driver was quite unable to control the truck.

"It should be self evident that loss of air from the tire would not normally result in loss of control. If this were the case, one would hardly dare to drive a truck because tire failure is not uncommon as can be observed in any drive down the highway. The fact that the bracket contains a gross casting defect is also apparent, even to the unaided eye, and has been observed by others. It remained to be explained why the spring failed.

"The spring failure was, in my opinion, the result of progressive cracking which started at an internal void close to the eye end. * * *

"* * * * *

"* * * By the time that the driver applied the brakes immediately prior to the subject accident, the material had been so weakened that the spring was no longer able to sustain the load imposed upon it. * * *"

"MR. CHADSEY: I have no objection if he wants to read the whole document. I do object that the document itself is hearsay."

IHC argues (1) that the trial court improperly relied on the rule embodied in *former* ORS 41.880 (*repealed by* Or Laws 1981, ch 892, § 98) that allowed proof of a whole transaction when a part is admissible; *see* OEC 106; (2) that the evidence was inadmissible under the primary/secondary rule, a rule addressed to the cumulative aspect of evidence that prohibits introduction of secondary evidence, the report, after the primary evidence, Evanson's testimony, had been admitted; *see Scanlon v. Hartman,* 282 Or 505, 579 P2d 851 (1978); and (3) that the report was hearsay. IHC's first two arguments were not raised below. Therefore, we will not consider them. *See Blue Ribbon Bldgs v. Struthers,* 276 Or 1199, 1205, 557 P2d 1350 (1976).

IHC's objection that the report was hearsay appears to be in conflict with its counsel's statement that he had no objection to having the whole document read to the jury. IHC's counsel had read the most relevant part of the report to the jury. The remaining part of the report did little more than explain how the witness had reached his conclusions.

Evanson's short report was admitted during a long trial. The jury was told that the crucial issue was the *cause* of the fractured spring and that the evidence was in conflict on that issue. In addition, after its admission in evidence, neither plaintiff nor the county referred to Evanson's report. IHC read from it, however, in its closing argument. Assuming that the admission of the report over IHC's hearsay objection was error, we conclude that the error was harmless.

■ Following the accident, Pearson, a county employe, assisted in the county's investigation. He interviewed Pinheiro, the driver, and prepared an accident report and a workers' compensation claim form. Pearson had no firsthand knowledge of the accident and described the information contained in the two documents he prepared as his "impression" of what occurred. At trial, IHC attempted to introduce the two documents in evidence, arguing that, although they were hearsay, they fit exceptions to the hearsay rule. The trial

court sustained objections to the evidence.[4] It also sustained the county's objection to IHC's questioning of Pinheiro concerning what Pearson had testified to regarding the documents earlier in the trial.

IHC concedes that the reports contain double hearsay. The contents of the report constitute out-of-court statements made by Pearson, and are therefore hearsay. Further, some of the statements authored by Pearson are based on declarations by Pinheiro, which constitutes hearsay upon hearsay. *See Mayor v. Dowsett*, 240 Or 196, 236, 400 P2d 234 (1965).

■ An otherwise admissible statement containing two types of hearsay must be excluded unless both come within exceptions to the hearsay rule. *See Wynn v. Sundquist*, 259 Or 125, 132, 485 P2d 1085 (1971); *see also* OEC 805. IHC argues

---

[4]

"MR. DEAN: I would offer 39, 40 and 41 at this time.

"* * * * *

"MR. LEAHY: I will object to 39 and 41, Your Honor.

"* * * * *

"MR. GREEN: * * *

"We will object to 41, Your Honor. There are some conclusions contained in the narrative that I think are objectionable.

"THE COURT: I had better have a talk with you gentlemen.

"* * * * *

(The following occurred in chambers.)

"THE COURT: Are you offering them as some kind of admissions against the interest of Multnomah County?

"MR. DEAN: Correct.

"THE COURT: No other purpose?

"MR. DEAN: Correct.

"THE COURT: The objections are sustained as to 39 and 41.

"MR. CHADSEY: We would then offer them as a business record and lay that foundation.

"THE COURT: Well, they may be business records and you may lay the foundation but they are not relevant for any purpose.

"I don't want to be understood as making the objection. However, if that objection is made, I would sustain it. I am really not trying his case any more than I am trying to try yours."

that the contents of the reports are admissible as business records and that, assuming the reports in issue fit that exception, the further statements by Pinheiro are admissible as vicarious admissions of the county. *See* OEC 801(4)(b) (admission of a party opponent is not hearsay). It also argues that the statements were admissible for impeachment.

■ We hold that the reports were not admissible under the business records exception. We therefore need not consider whether Pinheiro's statements constituted vicarious admissions of the county. Even if that contention is correct, the reports are nevertheless inadmissible hearsay. *Former* ORS 41.690 (*repealed by* Or Laws 1981, ch 892, § 98), the statute then in effect, provided:

> "A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

*See* OEC 803(6). The statute required that the report in issue be made "in the regular course of business." In *Scanlon v. Hartman, supra,* 282 Or at 511, the Supreme Court noted that

> "[t]he phrase [']regular course of business['] means the records must be made *regularly* in addition to being incident to a business." (Emphasis in original.)

*Scanlon* held that it was error to admit an isolated memorandum from a physician to plaintiff's counsel. Here, there was no showing that the reports were made as part of the county's regular business. The documents were merely investigative reports of a type inadmissible under *former* ORS 41.690. *See Lepire v. MVD,* 47 Or App 67, 77, 613 P2d 1084 (1980). Further, *former* ORS 41.690 granted the trial court "considerable discretion" concerning the documents' admissibility. *Stanfield v. Laccoarce,* 284 Or 651, 664, 588 P2d 1271 (1978). The trial judge was faced with hearsay documents prepared by an employe of a party defendant who had no firsthand knowledge of the accident. *See Wynn v. Sundquist, supra,* 259 Or at 135. He testified that his reports merely contained his impression of what had occurred. We conclude that the trial

court did not abuse its discretion in sustaining the objection to the admission of the evidence.

Because IHC did not offer the documents for impeachment purposes, we need not reach the question whether the documents were admissible to impeach Pinheiro. The reports were offered substantively and were properly refused. *See Blue Ribbon Bldgs. v. Struthers, supra,* 276 Or at 1205. We find no error.[5]

■ IHC contends that the trial court erred in refusing to instruct the jury as follows:

"I instruct you that a finding cannot be based upon evidence which is opposed to established physical facts."

IHC argues that it was an established physical fact that the truck's spline, or drive shaft, was undamaged and that that would not have been possible had the events occurred as explained by plaintiff's expert. The trial court instructed the jury in relevant part:

"Your verdict should be based only upon these instructions and upon the evidence in the case. It is your duty to weigh the evidence calmly and dispassionately and to decide the questions upon their merits. You are not to allow bias, sympathy, or prejudice any place in your deliberations, for all parties are equal before the law. Neither are you to base your decision on guesswork, conjecture, or speculation.

"* * * * *

"* * * In determining the weight to be given such an opinion, you should consider the qualifications and the credibility of the witness and the reasons given for the opinion. And you should also consider whether or not those reasons are based on facts which are established by the evidence rather than being based upon mere assumptions of the witness."

The instructions taken as a whole, *Hansen v. Bussman,* 274 Or 757, 781, 549 P2d 1265 (1976), adequately apprised the jury that it had to base its verdict on established facts and could not engage in speculation. We find no error.

---

[5] Plaintiff argues there was no error in denying IHC the opportunity to impeach Pinheiro, because IHC recalled him as its own witness solely to impeach him. *See State v. Dowell,* 274 Or 547, 551, 547 P2d 619 (1976); *State v. Hill,* 32 Or App 299, 573 P2d 1273 (1978). Our resolution of the issue renders it unnecessary to consider that argument.

We next consider whether the trial court erred in denying IHC's motion for a directed verdict on plaintiff's product liability claim and in instructing the jury on that theory. IHC contends that strict liability has never been extended to cover bystanders and that it only covers users and consumers of unreasonably dangerous products.

Oregon courts have not yet directly considered whether the doctrine of strict product liability applies to injuries to bystanders.[6] In *Heaton v. Ford Motor Co.,* 248 Or 467, 470, 435 P2d 806 (1967), the Supreme Court adopted Restatement (Second) Torts § 402A (1965), and held that manufacturers are liable for harm caused by defects that render their products unreasonably dangerous. In *Cornelius v. Bay Motors,* 258 Or 564, 571, 484 P2d 299 (1971), the Supreme Court was presented with the question whether the doctrine applied to casual bystanders but expressly reserved ruling on the issue. Instead, the court assumed that the benefits of the doctrine extend to bystanders but held that the plaintiff had failed, on other grounds, to make its case. In *Russell v. Ford Motor Co.,* 281 Or 587, 590, 575 P2d 1383 (1978), however, the Supreme Court stated:

> "The liability is independent of contractual privity and extends to remote buyers, users or others foreseeably within the range of the danger created by the defective condition."

*See Price v. Gatlin,* 241 Or 315, 316, 405 P2d 502 (1965).

In *Wirth v. Clark Equipment Co.,* 457 F2d 1262, 1265 (9th Cir), *cert den* 409 US 876 (1972), the Court of Appeals held that an injured longshoreman could recover under a strict product liability theory for injuries resulting from a defectively designed piece of heavy equipment. The court applied Oregon law and determined that, assuming that the plaintiff was a bystander, extension of liability for injuries to bystanders was not unwarranted. *See Brizendine v. Visador Co.,* 305 F Supp 157 (D Or 1969); *aff'd* 437 F2d 822 (9th Cir 1970); *Blake v. Webster Orchards,* 249 Or 348, 437 P2d 757 (1968).

Most states that have considered the question have extended the protection to injured bystanders. *See* 1 *Products*

---

[6] After the trial, the legislature enacted ORS 30.920, which embraces Restatement (Second) Torts, § 402A and its comments. ORS 30.920(2)(b) appears to include bystanders as members of the class entitled to recover.

*Liability Reporter* (CCH) § 4210 (1982); *Martin v. Ryder Truck Rental, Inc.,* 353 A2d 581, 588 n 9 (Del Super 1976). In *Elmore v. American Motors Corp.,* 70 Cal2d 578, 75 Cal Rptr 652, 451 P2d 84 (1969), the California Supreme Court extended liability to a bystander injured in an automobile accident caused by a defective drive shaft. The court noted that injury to a bystander is a risk foreseeable to automobile manufacturers and that a restriction on bystanders' recovery is a "distorted shadow" of the vanishing requirement of privity of contract. *Elmore v. American Motors Corp., supra,* 451 P2d at 89, *quoting* 2 Harper and James, The Law of Torts 1572, n 6 (1956). The court reasoned:

> "If anything, bystanders should be entitled to greater protection than the consumer or user where injury to bystanders from the defect is reasonably foreseeable. Consumers and users, at least, have the opportunity to inspect for defects and to limit their purchases to articles manufactured by reputable manufacturers and sold by reputable retailers, whereas the bystander ordinarily has no such opportunities. In short, the bystander is in greater need of protection from defective products which are dangerous, and if any distinction should be made between bystanders and users, it should be made, contrary to the position of defendants, to extend greater liability in favor of the bystanders."

*See Caruth v. Mariani,* 11 Ariz App 188, 463 P2d 83 (1970). The Indiana Court of Appeals took a similar view in *Chrysler Corp. v. Alumbaugh,* 168 Ind App 363, 342 NE2d 908, 348 NE 2d 654 (1976). It held that occupants of other vehicles operating on the highway in close proximity to a defective and therefore unreasonably dangerous automobile are foreseeable plaintiffs. *Chrysler Corp. v. Alumbaugh, supra,* 342 NE 2d at 917.

■ We hold that the doctrine of strict product liability extends to bystanders injured as a result of unreasonably dangerous products. It is the public policy of this state that the burden of injuries caused by defective products be placed on the manufacturers and sellers of those products. *See* ORS 30.920; *Ashmore v. Cleanweld Products,* 66 Or App 62, 64, 672 P2d 1230 (1983). Innocent victims should not be required to

bear the burden of injuries caused by defective products.[7] *See State ex rel Western Seed v. Campbell,* 250 Or 262, 266, 442 P2d 215 (1968); *cert den* 393 US 1093 (1969); *Greenman v. Yuba Power Products,* 59 Cal2d 57, 27 Cal Rptr 697, 377 P2d 897, 901 (1962).

■ The injuries plaintiff sustained were a foreseeable result of permitting an unreasonably dangerous truck to be on a public road. Plaintiff was a person "foreseeably within the range of the danger" created by the defective truck. *Russell v. Ford Motor Co., supra.* The trial court did not err in denying IHC's motion for a directed verdict or in instucting the jury on plaintiff's products liability claim.

■ IHC also contends that the trial court erred in denying its motion for a directed verdict on plaintiff's negligence claim. It argues that, if in fact a defect existed, there was no evidence that it knew of or should have known of the defect or that the defect would have been discoverable in the exercise of ordinary care. We view the evidence in the light most favorable to plaintiff. *Myers v. Cessna Aircraft,* 275 Or 501, 505, 553 P2d 355 (1976). We conclude that sufficient evidence of negligence existed to justify submission of the issue to the jury. *See Simpson v. Sisters of Charity of Providence,* 284 Or 547, 549, 588 P2d 4 (1978). We find no error.

■ IHC last contends that the trial court erred in failing to instruct the jury concerning speculative damages. As a result of plaintiff's injuries, her spleen was removed. Evidence indicated that loss of the spleen made her more susceptible to illness. IHC argues that there was no evidence that it was probable, as opposed to possible, that she would have contracted any particular illness with greater frequency. *See Feist v. Sears, Roebuck & Co.,* 267 Or 402, 517 P2d 675 (1973). The trial court instructed the jury that plaintiff had the burden of proving her injuries and damages by a preponderance of the

---

[7] In denying IHC's motion, the trial court stated:

"THE COURT: Well, I am fairly confident that, if the day ever comes that the Court is given a case sufficiently simple so it doesn't tax anybody's talent too greatly—for example, if a fellow falls off a ladder because it is defective and sprains his ankle but he lands on an innocent bystander and breaks his neck—it is inconceivable to me that he can recover for his sprained ankle but the bystander, who is crippled for life, can't recover at all. I don't think that would be too difficult even for members of the Bar to understand, much less the Supreme Court.

evidence. The court also listed the items of general damages that the jury could consider. The court then instructed:

> "Fourth and finally, general damages should include the sum which will compensate the plaintiff for the reasonable value of medical care and services which it is reasonably probable will be sustained by her in the future."

The court instructed the jury that it was not to engage in "guesswork, conjecture, or speculation." *See Hansen v. Bussman, supra,* 274 Or at 781. We find no error.

Affirmed on appeal and on cross-appeal.[8]

---

[8] Plaintiff says that we need not consider her cross-appeal if her judgment against IHC is affirmed. Therefore, the judgment in favor of the county is affirmed.