Argued and submitted June 17, 1991, reversed and remanded April 22,
reconsideration denied May 27, petition for review allowed July 21, 1992
(313 Or 627)

Timothy R. HANSEN,
*Appellant,*

*v.*

ABRASIVE ENGINEERING
AND MANUFACTURING, INC.,
*Respondent,*

*and*

AKHURST MACHINERY, INC.,
*Defendant.*

(87-CV-0302-TM; CA A61214)

831 P2d 693

─────────────────

Donald A. Bick, Eugene, argued the cause for appellant. With him on the briefs was Bick & Monte, P.C., Eugene.

William E. Flinn, Eugene, argued the cause for respondent. With him on the brief were John R. Osborn and William E. Flinn Associates, Eugene.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

De MUNIZ, J.

Buttler, P.J, dissenting.

## De MUNIZ, J.

Plaintiff brought this product liability action against defendant Abrasive Engineering and Manufacturing, Inc.,[1] seeking damages for injuries sustained when he was cleaning a sanding machine.[2] The jury found plaintiff 60 percent negligent and defendant, 40 percent. Plaintiff appeals, and we reverse and remand.

Defendant designed, manufactured and assisted in installing a 6-head sanding machine at the plant of plaintiff's employer, Bend Millworks. The sander was specifically designed for sanding wood products. During the sanding process, wood pitch and other material would build up, known as "loading," on the sanding belts. Plaintiff had been working for about three months and had been taught employer's procedure for cleaning the loading. He would open two large doors, which gave access to the sanding heads, partially insert his arm into the machine between two sanding heads and hold a rubber eraser and then a wire brush against the build-up on the sand paper which rotated on the sanding heads. On the night he was injured, plaintiff's glove was pulled by the sanding belt into a nip point between the belt and a pinch roller, essentially sanding off all of his left hand except for his thumb and a portion of his palm adjacent to the thumb.

Plaintiff's theory was that his injuries were caused by defendant's negligence in failing to design, build and install machine safety features consistent with the rules promulgated under the Oregon Occupational Safety and Health Code (OOSHC) and the Federal Occupational Safety Health Act (OSHA), as well as the advisory standards promulgated by the American National Standards Institute (ANSI).

Plaintiff assigns error to nine of the trial court's rulings, most of which relate to its determination that neither the state (OOSCH) nor federal (OSHA) safety rules were admissible for any purpose. The trial court's reasoning was that, because defendant is a manufacturer and thus not

---

[1] The complaint against the seller of the machinery, Akhurst Machinery, Inc., was dismissed shortly before trial.

[2] Plaintiff made a claim for workers' compensation and also brought this third party action. ORS 656.578.

subject to the rules, they do not provide a standard of care which can be applied to it. Therefore, the court held, the rules are not relevant. However, relevance is not dependent solely on whether or not rules apply to a particular defendant. A defendant must be subject to the governmental enactment before there can be statutory liability. *See Dunlap v. Dickson*, 307 Or 175, 765 P2d 203 (1988). When that is the case, the enactment may be used to establish the standard of care. *Bellikka v Green*, 306 Or 630, 650, 762 P2d 997 (1988); *Shahtout v. Emco Garbage Co.*, 298 Or 598, 604, 695 P2d 897 (1985). However, even if the statutory standard of care does not apply to a defendant, it might indicate a standard that the defendant should have met. *Bellikka v. Green, supra*, 306 Or at 651. Whether a rule is relevant depends on its purpose and the risk to which it is addressed. *Shahtout v. Emco Garbage Co., supra*.

■ Plaintiff's second amended complaint used the wording of the rules to allege that defendant was negligent by failing to incorporate specific safety features into the machine.[3] His first assignment of error is that the trial court erred by granting defendant's motion to strike those allegations. There was no error. The parties agree that the rules did not obligate defendant to provide the safeguards and that plaintiff has no claim for statutory liability. Thus, any liability of defendant cannot be predicated on a finding that it

---

[3] The allegations were:

"At all times material hereto, Defendants were negligent in one or more of the following particulars:

"(1) In failing to provide an effective machine guard which protects the operator from the hazards created by point of operation or an in-going nip point.
"* * * * *

"(5) In failing to provide a semi-circular guard to prevent the operator's hands from coming in contact with the in-running rolls at any point.

"(6) In failing to provide guards at each nip point where the sanding belt runs onto a pulley which would effectively prevent the hands of the operator from coming in contact with the nip point.

"(7) In failing to provide a guard which would prevent accidental contact with the unused run of the sanding belt."

Subparagraph 9(1) of the complaint uses language consistent with the requirements of OAR 437-64-010; subparagraph 9(5) uses substantially the wording of OAR 437-64-330(1); subparagraph 9(6) uses the language of OAR 437-64-330(4)(a); and subparagraph 9(7) uses the language of OAR 437-64-330(4)(b). Provisions similar to the Oregon code are found in the federal OSHA regulations in almost exactly the same language.

failed to comply with a mandatory design feature. Plaintiff's allegations would permit a jury to make that conclusion. Despite plaintiff's protestation that his claim is only for common law negligence, the allegations frame a claim for negligence *per se*, and the trial court did not err in striking them.

The trial court granted defendant's motion *in limine*, the effect of which prohibited plaintiff from making any reference to, or submitting any evidence of, any state or federal safety code, including on the issue of punitive damages.[4] Plaintiff argues that that was error, because the rules provide one measure by which the jury could determine whether defendant's conduct was reasonable.

Defendant relies on *Shahtout v. Emco Garbage Co.*, *supra*, in which the plaintiff was injured when the defendant's truck backed up and struck her. She sought to put in evidence a rule requiring a vehicle with an obstructed rear view to have either alarms or observers when backing up. The court held that, because the rule had been promulgated to protect workers, the relevance of the rule depended, in part, on whether it sought to avoid a risk which could also apply to nonemployees.

We do not agree with defendant that *Shahtout* stands for the proposition that a rule has no relevance unless it addresses a common risk. In *Shahtout*, that was a requirement precisely because the plaintiff was *not* a worker; a relevance necessarily depended on her showing that the risk was not one which only a worker would encounter. Here, plaintiff was a worker, and the rules were promulgated to protect workers against precisely the kind of risk which caused plaintiff's injury.

Although the rules do not bind defendant, it does not follow that they have no relevance on the question of due care. *Shahtout v. Emco Garbage Co.*, *supra*, 298 Or at 601, 603. We agree with plaintiff that the jury should have been permitted to consider them in its determination of what standard of care

---

[4] Plaintiff also has assigned as error the trial court's rulings "over the course of the trial" that evidence of the rules was not admissible. That assignment does not meet the requirements of ORAP 5.45. However, plaintiff has combined his argument on the two assignments and, therefore, we address it.

defendant should have been expected to meet. *See Flores v. Metro Machinery Rigging, Inc.*, 99 Or App 636, 641 n 4, 738 P2d 1024 (1989), *rev den* 309 Or 521 (1990).

■■ We will not reverse a trial court for evidentiary error unless the error affects a substantial right of a party. OEC 103. That evidence is merely cumulative does not affect a substantial right. *Hager v. American Honda Motor Co.*, 101 Or App 640, 643, 792 P2d 459 (1990). Although the rules closely parallel the ANSI standards, we cannot say that the error here was harmless or merely cumulative.

> "The role of the rule is not to show what in fact happened nor what experts or others engaged in activities like those that caused the injury consider the proper means to avoid it. If the safety rule is one that may be considered at all under the foregoing test, the jury (or judge) may take this governmentally prescribed safeguard into account in deciding the issue of due care. Plaintiff may argue that the government has adopted the rule as an obligatory safeguard for employees in the kind of situations and against the kind of risk that led to plaintiff's injury." *Shahtout v. Emco Garbage Co.*, *supra*, 298 Or at 605.

■ Plaintiff was denied the opportunity to make that argument. Defendant, on the other hand, was able to argue to the jury that the advisory rules did not reflect safeguards that would protect against the risk that plaintiff met:

> "There are some red herrings in this case. I've written down on a piece of paper for you, it kind of helps me move along through them in a little more orderly fashion. The red herrings I would like to talk about are advisory standards, the manual that came with the machine, the issue of belt adjustment to the machine and the issue of engineers with and without degrees.
>
> "* * * * *
>
> "Here's what Mr. Meyers and Dr. Adams [plaintiff's witnesses] told you. First, they told you that the ANSI and JIC advisory standards are consensus standards. * * * That means everybody in the industry agrees with them. Everybody in the industry follows them. Second, they told you that these advisory standards as they understood them required makers of wide belt sanders to install an interlock padlock or an interguard on the machine. Third, they told you in their opinion because one of those devices was not on this sander,

that the defendant was negligent and that the sander was unsafe. And finally they told you that if they had been designing these standards that they would have done it differently.

"Now, let's look at what we know from the evidence. First of all, we know the standards, at least as they are interpreted by Mr. Meyers and Dr. Adams are not consensus standards. Apparently everyone in the industry does not agree with them and we know that everybody in the industry does not have them. If fact, none of the makers of wide belt sanders have these devices the these experts say were required by the advisory ANSI and JIC standards.

"* * * * *

"Judge Mosgrove is going to tell you about these advisory standards. He is going to tell you, as [plaintiff's counsel] indicated, that they do not have the force and the effect of law. *They are not a law. They are not mandatory. They are, as the witnesses have described, simply recommendations drawn up by some committee sitting in New York.* That committee for all we know may be composed of engineers such as Mr. Meyers, and Dr. Adams, who as we also know have precious little knowledge about how the machines are designed, what factors go into design, and how the machines are operated." (Emphasis supplied.)

Because the jury did not know that mandatory rules had been adopted, it could not measure defendant's argument against the fact that the advisory rules had been determined to reduce the risk that plaintiff confronted. We cannot say that the jury would not have defendant to a higher standard of care and found defendant's fault greater, had it known that the features that were recommended as advisory by ANSI were considered mandatory for adequate safety by state and federal agencies.[5]

■ Plaintiff also assigns as error the trial court's striking of his allegations that defendant was negligent because it failed to inform plaintiff's employer that the machines did not comply with federal and state safety codes. He argues that the jury could have concluded that it was foreseeable that, if the employer was not told that the machinery lacked the required

---

[5] Defendant argues on a cross-assignment of error that the trial court should not have admitted evidence of the ANSI standards. There was no error. The standards, like the rules, are relevant on the issue of the standard of care.

safeguards, it would place the sander in operation without them. However, the question is not whether defendant could conceivably have foreseen what occurred but whether it had an obligation to inform the employer about the rules. *See Nord v. Wetmore*, 105 Or App 246, 804 P2d 501 (1991). It did not.

■ Because the issue may arise in a new trial, we address plaintiff's assignment of error that the trial court erred in allowing defendant to read excerpts from the written report of Dr. Holland, a psychiatrist. He had examined plaintiff at the request of plaintiff's employer and workers' compensation insurance carrier as part of their defense of plaintiff's workers' compensation claim. *See* n 1, *supra*. The excerpts included plaintiff's statements about how the accident happened and that he believed he had failed to be assertive enough to refuse to do the job. It also contained Holland's conclusion that plaintiff's emotional problems were caused in part by a "personality disorder" that pre-existed the injury.[6]

The court held that the report was admissible under the business records exception to the hearsay rule, OEC 803, which provides, in part:

"The following are not excluded by ORS 40.455, even through the declarant is available as a witness:

"* * * * *

"(6) A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it

---

[6] The report said, in part:

"[Plaintiff's] diagnosis now consists primarily of a personality disorder which undoubtedly pre-existed the industrial injury and has contributed a significant element of mal-adaption to his post-injury course. His personality disorder has made him a difficult person with which to deal and will undoubtedly continue to offer a significant barrier to his return to work.

"Due to the fact that the injury resulted in a loss of a body part and a change in body image, he will have a permanent psychiatric impairment. His pre-existing personality disorder also offers impairment and it is difficult to separate that impairment produced by his pre-existing personality disorder and that produced by his injury. The change in body image will influence his thinking, perception, affect behavior and ability to some extent. I would rate his overall impairment as moderate to severe and that impairment due to his industrial injury as moderate."

"was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of the information or the method of [sic] circumstances of preparation indicate lack of trustworthiness."

Defendant argues that the rule covers diagnosis, which Holland performed here, and that the report was a record of a regularly conducted activity. However, under these facts, we do not agree that the report comes within the exception. OEC 803 permits a report to be used as evidence, if it was the regular practice of that business activity to make the report. Even if Holland prepares many of these reports, they are a "regular" part of his business as an expert witness for litigation, not a "regular" part of his practice of psychiatry. Holland was not plaintiff's treating physician and never intended to use the report to assist in treating plaintiff. Its usefulness was solely as an aid to litigation. The report was generated for litigation purposes and lacks the indicia of trustworthiness central to the rationale of the exception. *Lepire v. MVD*, 47 Or App 67, 79, 613 P2d 1084 (1980).

Because of our disposition of the appeal, we need not address plaintiff's remaining assignments of error.

As a cross-assignment of error, defendant argues that it was error to allow plaintiff to read into evidence portions of telephone depositions. Defendant contends that OEC 804(3)(a) requires that a declarant must be "unavailable as a witness" before a deposition can be offered in lieu of testimony. The witnesses here were out of state and unavailable to process. However, defendant contends that plaintiff also had to make a showing that he attempted to procure the witnesses' attendance by other means, such as telephone calls, "letters of entreaty" or the "offer of a plane ticket."

Plaintiff was not required to make that showing here. OEC 804(1)(e) states that a declarant is unavailable if attendance cannot be procured "by process or other reasonable means." However, that section must be considered in conjunction with ORS 45.250, which governs the admissibility of deposition evidence and does not require a showing of "other reasonable means." The trial judge determined that

the depositions were usable according to the requirements of ORS 45.250. We find no error.

Reversed and remanded.

**BUTTLER, P. J.,** dissenting.

Plaintiff was permitted to allege and to offer in evidence the ANSI safety standards that *were applicable* to defendant as a manufacturer. Although defendant was not required to comply with them, they formed the predicate for the standard of care applicable to plaintiff's claim — common law negligence.

The rules promulgated under the Oregon Occupational Safety and Health Code (OOSHC) and the Federal Occupational Safety Health Act (OSHA), both of which require *employer* but not manufacturer compliance, are substantially identical to the ANSI standards. The trial court did not permit plaintiff to allege or offer in evidence the OOSHC or OSHA regulations, because they were not applicable to defendant, a manufacturer.

Because the jury found that defendant was negligent, it must have found that defendant's performance in the manufacture of the machine did not meet the ANSI standards. However, it also found that plaintiff was negligent and apportioned the negligence, 60% to plaintiff and 40% to defendant. I do not see how plaintiff would have been aided by relying on the OOSHC and OSHA rules; they are redundant of ANSI standards. If defendant was negligent under one, it was also negligent under the others — no more and no less. The trial court did not err but, even if it did, the error was harmless.

In holding that the trial court erred and that the error was not harmless, the majority says that plaintiff would have been entitled to argue to the jury that the OOSHC and OSHA rules were not just standards, as are ANSI standards, but could have argued that they are obligatory safeguards. It relies on *Shahtout v. Emco Garbage Co.*, 298 Or 598, 605, 695 P2d 897 (1985), for that proposition. I do not agree that *Shahtout* would permit that kind of argument here, because defendant was not required to comply with those rules, whereas the defendant in *Shahtout was* required to comply.

Be that as it may, the jury found defendant negligent on the basis of the non-obligatory standards compiled in ANSI. Obviously, it was not impressed with defendant's argument that they were only standards. There is nothing in the record that even suggests that defendant would have been found more negligent if plaintiff had been permitted to argue that the rules or standards were obligatory on defendant.

Plaintiff's job was to persuade the jury that defendant was negligent and that he was less negligent. He succeeded in the first but failed in the second. The error that he now claims, which the majority accepts, could not have made any difference in the outcome.

Accordingly, I dissent.