Argued and submitted November 2, 1992, decision of the Court of Appeals affirmed in part and reversed in part; judgment of the circuit court reversed and case remanded to the circuit court August 12, 1993

Timothy R. HANSEN,
*Respondent on Review,*

*v.*

ABRASIVE ENGINEERING
AND MANUFACTURING, INC.,
a foreign corporation,
*Petitioner on Review,*

*and*

AKHURST MACHINERY, INC.,
an Oregon corporation,
*Defendant.*

(CC 87-CV-0302-TM; CA A61214; SC S39226)

856 P2d 625

William E. Flinn, of William E. Flinn Associates, Eugene, argued the cause for petitioner on review. With him on the petition was John R. Osborn, Eugene.

John R. Faust, Jr., Portland, argued the cause for respondent on review. The response was submitted by Donald A. Bick, of Bick & Monte, P.C., Eugene.

Robert K. Udziela, of Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland, filed a brief *amicus curiae* on behalf of the Oregon Trial Lawyers Association.

Joel S. DeVore, of Luvaas, Cobb, Richards & Fraser, P.C., Eugene, filed a brief *amicus curiae* on behalf of the Oregon Association of Defense Counsel.

VAN HOOMISSEN, J.

Gillette, J., filed a concurring opinion.

## VAN HOOMISSEN, J.

Plaintiff brought this product liability action in common law negligence against defendant Abrasive Engineering and Manufacturing, Inc., seeking damages for injuries that plaintiff sustained while cleaning a sanding machine that defendant designed and manufactured.[1] The jury found plaintiff 60 percent negligent and defendant 40 percent negligent, and judgment was entered for defendant. *See* ORS 18.470 (comparative negligence standard). Both parties appealed. The Court of Appeals reversed and remanded for a new trial. *Hansen v. Abrasive Engineering and Manufacturing*, 112 Or App 586, 831 P2d 693 (1992). We allowed defendant's petition for review. We affirm the Court of Appeals in part and reverse in part and remand the case for a new trial.

We take the facts from the Court of Appeals opinion:

"Defendant designed, manufactured and assisted in installing a 6-head sanding machine at the plant of plaintiff's employer, Bend Millworks. The sander was specifically designed for sanding wood products. During the sanding process, wood pitch and other material would build up, [a phenomenon] known as 'loading,' on the sanding belts. Plaintiff had been working for about three months and had been taught employer's procedure for cleaning the loading. He would open two large doors, which gave access to the sanding heads, partially insert his arm into the machine between two sanding heads and hold a rubber eraser and then a wire brush against the build-up on the sand paper which rotated on the sanding heads. On the night he was injured, plaintiff's glove was pulled by the sanding belt into a nip point between the belt and a pinch roller, essentially sanding off all of his left hand except for his thumb and a portion of his palm adjacent to the thumb." 112 Or App at 588.

Plaintiff's theory was that his injuries were caused by defendant's negligence in failing to incorporate machine safety features in the sanding machine consistent with safety rules promulgated under the Oregon Occupational Safety and Health Code (OOSHC) and the federal Occupational

---

[1] Plaintiff made a claim for workers' compensation and also brought this third-party action. *See* ORS 656.578 (providing procedure). Plaintiff's claim against Akhurst Machinery, Inc., the seller of the machinery, was dismissed before trial and is not part of this review.

Safety Health Act (OSHA), and with advisory standards promulgated by the American National Standards Institute (ANSI). The OOSHC and OSHA rules, which require employer compliance, do not obligate defendant, a manufacturer and seller of machinery, to provide the safeguards, and plaintiff made no claim for statutory liability. Although defendant was not required by any statute to comply with the ANSI standards, they formed the predicate for plaintiff's theory as to the standard of care applicable to his common law negligence claim.

Before trial, defendant moved *in limine* for an order prohibiting plaintiff from making any reference to or offering any evidence of the OOSHC or OSHA rules or the ANSI advisory standards.[2] The trial court granted defendant's motion, reasoning that, because the OOSHC and OSHA rules were not applicable to a manufacturer and therefore imposed no "duty" on defendant, they were not admissible *for any purpose*. Notwithstanding that ruling, and over defendant's objections based on lack of relevancy and lack of a proper foundation, the court allowed the jury to consider the ANSI advisory standards on the issue of whether defendant met the applicable standard of care.

Over defendant's objection that plaintiff had not shown that certain witnesses were "unavailable" as that term is defined in OEC 804(1)(e), the trial court allowed plaintiff to read into evidence portions of transcripts of telephonic depositions of two witnesses who were out of state and unavailable for service of process.

Over plaintiff's objection that the report was hearsay and not admissible under the business records exception, the trial court allowed defendant to read into evidence excerpts from a written report of Dr. Holland, a psychiatrist, who had examined plaintiff at the request of plaintiff's employer and its workers' compensation insurance carrier as part of the

---

[2] In part, defendant's pretrial motion *in limine* sought an order prohibiting reference to or evidence of the following:

"(1) Specific state safety code sections or their requirements until relevancy becomes unconditional.

"(2) Any federal safety code sections.

"(3) Specific advisory standards or their requirements until relevancy becomes unconditional."

employer's defense of plaintiff's workers' compensation claim. Dr. Holland did not treat plaintiff. The excerpts included statements made by plaintiff about his anger at himself for letting the accident happen and about his belief that he had failed to be assertive enough to refuse to do the job. The report also contained Dr. Holland's diagnosis that plaintiff's emotional problems were caused, in part, by an unspecified "personality disorder which undoubtedly pre-existed the industrial injury and has contributed a significant element of mal-adaptation to his post-injury course."

The jury found for defendant. After judgment was entered for defendant, both parties appealed. On plaintiff's appeal, the Court of Appeals reversed, holding that the jury should have been permitted to consider the OOSHC and OSHA rules in its determination of what standard of care defendant should have been expected to meet and, therefore, that the trial court erred in ruling that the OOSHC and OSHA rules were not admissible for any purpose. The court also held that Dr. Holland's report was not admissible as a business record and that the trial court therefore erred in permitting defendant to read excerpts from that report to the jury.

On defendant's cross-appeal, the Court of Appeals affirmed the trial court's rulings that the jury could consider the ANSI advisory standards and that plaintiff could read into evidence portions of depositions of two witnesses who were out of state and unavailable for service of process. The Court of Appeals reversed and remanded the case for a new trial. We allowed defendant's petition for review.

On review, defendant contends that the Court of Appeals erred in concluding: that the jury could consider the ANSI advisory standards on the issue of whether defendant met the applicable standard of care; that the OOSHC and OSHA rules were improperly excluded at trial; that defendant should not have been permitted to read excerpts from Dr. Holland's report into evidence; and that the trial court properly allowed plaintiff to read into evidence excerpts of the transcripts of the discovery depositions of two witnesses. We consider each contention in turn.

*ANSI Advisory Standards*

■    Defendant contends that the Court of Appeals erred in holding that the trial court properly allowed the jury to consider the ANSI advisory standards on the issue of whether defendant failed to meet the standard of care that defendant owed to plaintiff. Defendant argues that, because the ANSI standards are purely advisory and not binding on anyone, they are not relevant. Plaintiff responds that, although such standards are advisory, they provide some evidence of whether defendant's conduct met the applicable standard of care.

Determination of the appropriate standard of care is an issue of law. In this case, both parties agree that the general "reasonable person" standard of care applies. Whether a defendant has met that standard of care is an issue of fact, to be determined by the jury. Thus, evidence pertaining to whether defendant's conduct was reasonable is relevant to the jury's determination of whether defendant met the reasonable person standard of care.

Because advisory safety standards that are adopted by nongovernmental entities such as ANSI may represent a consensus regarding what a reasonable person in a particular industry would do, they may be helpful to the trier of fact in deciding whether the defendant has met the standard of care due. *See* Annot, *Admissibility in Evidence, on Issue of Negligence, of Codes or Standards of Safety Issued or Sponsored by Governmental Body or by Voluntary Association,* 58 ALR3d 148 (1974 & Supp 1992) (noting trend toward admissibility of such standards on issue of failure to meet standard of care); Madden, Products Liability §12.4 (2d ed 1988 & Supp 1992) (industry standards may be admissible as evidence of negligence).

■    Although violation of an industry custom does not constitute negligence *per se,* it may be shown in order to establish whether a party has met a standard of care to which the party is required to conform. "It is a test of negligence, but not a conclusive or controlling test." *Mennis v. Cheffings,* 233 Or 215, 220, 376 P2d 672 (1962) (pre-OEC case).

The ANSI advisory standards provide some evidence of the custom in defendant's industry and, therefore, are

relevant to the jury's consideration of whether defendant met the standard of care. We find no error in the admission of the ANSI standards into evidence.

### OOSHC and OSHA Rules

Defendant next contends that the Court of Appeals erred in holding that evidence relating to the OOSHC and OSHA safety rules were improperly excluded at trial.[3] Defendant argues that, because it is not an employer subject to the safety requirements contained in those two sets of rules, the court misapplied the rule of law from *Shahtout v. Emco Garbage Co.*, 298 Or 598, 695 P2d 897 (1985), that allows for use of certain safety regulations in negligence cases. Plaintiff responds that, because the rules at issue here pertain to proper guarding of the machine to ensure that workers do not sustain the type of injury that plaintiff sustained, the existence of OOSHC and OSHA rules governing the use of such machines in the employer's workplace is relevant to the issue of the standard of care that defendant should have exercised.

The Court of Appeals relied on this court's decisions in *Bellikka v. Green*, 306 Or 630, 762 P2d 997 (1988), and *Shahtout v. Emco Garbage Co., supra*, for the proposition that, although a statutory standard of care does not apply to a defendant, the statute (or rules such as the OOSHC and OSHA rules) might provide some indication of whether defendant met the standard of care due. *Hansen v. Abrasive Engineering and Manufacturing, supra*, 112 Or App at 589.

In *Shahtout*, the plaintiff was struck by the defendant's truck while it was backing up. The plaintiff brought an action for common law negligence, arguing that the truck should have been equipped with a back-up signal and relying in part on a Workers' Compensation Department safety rule requiring such devices to be used on job sites such as the defendant's. 298 Or at 600. Although the plaintiff in *Shahtout* was not an employee of the defendant, and the safety rule did not "fix a standard of due care for liability toward persons other than employees," *id.* at 604, this court held that the rule was relevant to the issue of due care, *id.* at 604-05.

---

[3] Plaintiff made an offer of proof at trial concerning the relationship between the OOSHC and OSHA rules and the ANSI advisory standards. The rules were derived from and are substantially identical to the ANSI standards.

Similarly, in *Bellikka v. Green, supra,* 306 Or at 650, provisions from the Residential Landlord and Tenant Act, ORS 91.700 *et seq,* were held to be relevant in a personal injury action against a defendant landowner "to establish the proper standard of care, and to show that the defendant met or failed to meet this standard." This court then added, in *dictum,* that, "[e]ven if the statutory standard of care cannot be shown to apply to the defendant, the statute might indicate standards of care that the defendant should have met." *Id.* at 650-51.

Defendant urges that those cases are distinguishable from the present case, because in each of those cases the defendant was bound by the rule in question, even though the rule did not fix the standard of care due to the plaintiffs. Plaintiff argues that the *dictum* from *Bellikka v. Green,* quoted above, indicates that the same rule applies even if a defendant is not bound by the rules in question. For the reasons that follow, we hold that the OOSHC and OSHA rules should have been admitted into evidence in this case and that plaintiff's experts should have been allowed to rely on those rules in their testimony.

This court has held that a "manufacturer should have a duty of exercising due care to avoid foreseeable harm to the users of [its] product." *State ex rel Western Seed v. Campbell,* 250 Or 262, 270, 442 P2d 215 (1968), *cert den* 393 US 1093 (1969). In the present case, the jury was required to determine whether defendant's design and manufacture of its sanding machine fell below that standard of care. Defendant designed and manufactured its sanding machine for use by customers such as plaintiff's employer for use in a workplace governed by the OOSHC and OSHA rules. Thus, the OOSHC and OSHA rules are relevant, even though not binding on defendant, for exactly the same reasons that the ANSI standards are relevant, *i.e.,* because they pertain to the issue of whether defendant met the standard of care. Those *non-binding* rules are properly to be considered as evidence, similar to evidence of industry custom or trade practice,[4] and

---

[4] *See* Note, *The Use of OSHA in Products Liability Suits Against the Manufacturers of Industrial Machinery,* 11 Val U L Rev 37, 52 n 61 (1976) ("[O]nce a duty of reasonable care exists, general customs and practices are relevant as an evidentiary guide toward the definition of that duty in a particular situation. Safety codes are

are admissible because they are relevant to the jury's assessment of whether defendant complied with the standard of care.

The use of standards such as the OOSHC and OSHA rules in tort cases has gained acceptance in recent years, even where a defendant manufacturer is not bound to those standards. Sometimes such standards are used by the defendant in a products liability case, either to shift the blame to the plaintiff's employer where the employer was not in compliance with the rules or to show that the defendant's product complied with the rules. It is also possible, however, for plaintiffs to use such rules in order to provide some evidence of whether the defendant met the standard of care due. *See generally* Note, *The Use of OSHA in Products Liability Suits Against the Manufacturers of Industrial Machinery*, 11 Val U L Rev 37, 51-61 (1976) (citing cases).

■     We conclude that the OOSHC and OSHA rules may be relevant to tort claims even when a defendant is not bound by those rules, depending on the circumstances of the case. Under circumstances such as these, where the defendant is not bound by the OOSHC and OSHA rules, those rules should be treated the same as the ANSI standards; they provide some relevant information for consideration by the jury about whether the defendant met the standard of care due and are, therefore, admissible as evidence. The trial court erred in excluding that evidence.

### Dr. Holland's Report

Defendant contends that the Court of Appeals erred in holding that defendant should not have been permitted to read excerpts from Dr. Holland's report into evidence. Defendant argues that the trial court correctly concluded that the

---

thus admitted as part of that custom and practice, not as a fixed rule the violation of which automatically makes a defendant negligent.").

The admissibility of the OOSHC and OSHA rules is not based on the rationale from the *Shahtout* case. In *Shahtout*, the defendant was bound by the rules, and they were subject to judicial notice. *Shahtout v. Emco Garbage Co.*, 298 Or 598, 605, 695 P2d 897 (1985).

report qualified as a business record under OEC 803(6).[5] Plaintiff argues that the report was prepared solely for litigation purposes and that, therefore, because the report does not have the same degree of reliability as a business record, the excerpts are inadmissible. We conclude that the trial court properly admitted the evidence.

■ Plaintiff was sent to Dr. Holland by plaintiff's employer's insurer for psychiatric evaluation as part of the insurer's defense of plaintiff's workers' compensation claim. Dr. Holland did not treat plaintiff. Defendant did not offer Dr. Holland's entire report. Rather, it offered only certain portions: Dr. Holland's diagnosis and plaintiff's own statements to Dr. Holland. The reports prepared by Dr. Holland contained opinions and diagnoses and were made from information transmitted by plaintiff. They were kept in the regular course of Dr. Holland's practice. Plaintiff has pointed to nothing regarding the circumstances of their preparation to indicate lack of trustworthiness, except the fact that the examination was conducted at the request of an insurer in contemplation of possible future litigation. By its express terms, OEC 803(6) covers diagnoses. Dr. Holland's diagnosis was admissible under OEC 803(6).

■ Plaintiff's statements to Dr. Holland were statements of a party opponent, OEC 801(4)(b)(A),[6] contained

---

[5] OEC 803(6) provides:

"The following are not excluded by [OEC 802 (hearsay)], even though the declarant is available as a witness:

"* * * * *

"(6) A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method of [sic] circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this subsection includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

[6] OEC 801(4)(b)(A) provides:

"A statement is not hearsay if:

"* * * * *

"(b)  The statement is offered against a party and is:

"(A)  That party's own statement * * *[.]"

within a business record, OEC 803(6), and therefore were admissible. *See* OEC 805.[7] The Court of Appeals erred in holding that defendant should not have been permitted to read those excerpts from Dr. Holland's report into evidence.

### Deposition

■ Last, defendant contends that the Court of Appeals erred in holding that the trial court properly allowed plaintiff to read into evidence portions of the transcripts of the discovery depositions of two witnesses on a mere showing that the witnesses were beyond the reach of a subpoena. Defendant argues that, because plaintiff had not shown any effort to procure the witnesses by "other reasonable means," as required by OEC 804(1)(e),[8] there was no showing that the witnesses were "unavailable" and, therefore, that the evidence was inadmissible. Resolution of that issue turns on the relationship among OEC 804(1)(e), OEC 804(3)(a),[9] OEC 802,[10] and ORS 45.250(2)(c).[11]

---

[7] OEC 805 provides:

"Hearsay included within hearsay is not excluded under [OEC 802] if each part of the combined statements conforms with an exception set forth in [OEC 803 or 804]."

The language of OEC 805 should be read to embrace statements in the chain that qualify as "not hearsay" under OEC 801(4). *See* 4 Louisell & Mueller, Federal Evidence 1222-23, § 496 (1980) (stating same principle as to FRE 805, the federal counterpart to OEC 805); Weisenberger, Federal Rules of Evidence, Rules, Legislative History, Commentary and Authority 539 (1987) (same); *State v. Waite*, 377 A2d 96, 100 n 3 (Me 1977) (while FRE 805 literally requires conformity to an "exception," that term includes the provisions of FRE 801(d) that are nonhearsay "exemptions").

[8] OEC 804(1)(e) provides that a witness is "unavailable" if that person:

"Is absent from the hearing and that the proponent of the declarant's statement has been unable to procure the declarant's attendance * * * by process or other reasonable means."

[9] OEC 804(3)(a) provides:

"The following are not excluded by ORS 40.455 [OEC 802] if the declarant is unavailable as a witness:

"Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding a predecessor in interest, had an opportunity and similar motive or develop the testimony by direct, cross, or redirect examination."

[10] OEC 802 provides:

"Hearsay is not admissible except as provided in [OEC 801 to 806] or as otherwise provided by law."

Defendant argues that the phrase "so far as admissible under the rules of evidence" in ORS 45.250(2) means that the deposition testimony also must be independently admissible under OEC 804, which provides an exception to the hearsay rule if the declarant is absent from the hearing and the proponent of the declarant's testimony has been unable to procure the declarant's testimony "by process or other reasonable means." OEC 804(1)(e) and (3)(a). The question, therefore, is whether ORS 42.250(2), which refers only to unavailability to service of a subpoena, limits the requirement of OEC 804(1)(e) that a proponent also must demonstrate that some "other reasonable means" in addition to issuance of a subpoena were employed to secure the witness.

ORS 45.250 was enacted in 1955. Or Laws 1955, ch 611, § 8. It remains essentially unchanged to this date. In 1955, the statute contained the phrase "so far as admissible under the rules of evidence." Before 1981, when the Oregon Evidence Code was enacted, the rules of evidence did not require the proponent of deposition testimony to show that he or she had sought the voluntary return of the declarant, in order for the evidence to be admitted. The deposition testimony was admissible under ORS 45.250(2)(c) simply on a showing that the offering party was "unable to procure the attendance of the witness by subpoena." We believe that, if the legislature had intended to change that procedure, it would have repealed ORS 45.250(2)(c) when it enacted OEC 804(1)(e). Nothing suggests that, by enacting OEC 804(1)(e), the legislature intended to limit the force of ORS 45.250(2).[12]

---

[11] ORS 45.250(2)(c) provides:

"At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, *so far as admissible under the rules of evidence*, may be used against any party for any purpose, if the party was present or represented at the taking of the deposition or had due notice thereof, and if the court finds that:

"* * * * *

"(c) The party offering the deposition has been unable to procure the attendance of the witness by subpoena[.]" (Emphasis added.)

[12] This appears to be consistent with Professor Kirkpatrick's analysis:

"Depositions taken to perpetuate testimony under ORCP 39I are defined as 'not hearsay' by Rule 801(4)(c). Therefore, such depositions are admissible to the extent the testimony therein complies with the other rules of evidence.

Federal case law considering this issue under the Federal Rules of Civil Procedure (FRCP) and the Federal Rules of Evidence (FRE) is consistent with that interpretation of the similar Oregon statutes. FRCP 32(a) provides in part:

"At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, *so far as admissible under the rules of evidence* applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:

"* * * * *

"(3)   The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: * * * (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing * * *." (Emphasis added.)

FRE 804(a)(5) is the federal parallel to OEC 804(1)(e) and, in all relevant respects, OEC 804(1)(e) mirrors its wording.

In *Carey v. Bahama Cruise Lines*, 864 F2d 201 (1st Cir 1988), a party sought to introduce deposition testimony of declarants who were more than 100 miles from the location of the trial. The court concluded that "this hearsay evidence was admissible under Federal Rule of Civil Procedure 32, Use of Depositions in Court Proceedings, which creates an independent exception to the hearsay rule." *Id.* at 204. In a footnote, the court noted that FRCP 32 "is more permissive than Federal Rule of Evidence 804(a)(5), which requires the party seeking to admit the deposition testimony to show that

"The admissibility of other depositions in civil cases [such as the deposition in this case] is governed by ORS 45.250 as well as Rule 804(3)(a). Although the provisions of the statute and rule are very similar, they differ in some respects. The differences in wording can best be reconciled by an interpretation that allows a deposition to be admitted if it qualifies for admission under either ORS 45.250 or Rule 804(3)(a).

"ORS 45.250(2) provides that a deposition be admitted 'so far as admissible under the rules of evidence.' This language should not be interpreted to mean that the admissibility of depositions is exclusively controlled by Rule 804(3)(a), but rather that the contents of depositions offered into evidence are still subject to the rules of evidence generally." Kirkpatrick, Oregon Evidence 630 (2d ed 1989 & Supp 1992).

it was unable to procure the attendance of the defendant through 'process or other reasonable means.' " *Id.* at 204 n 2.

*Southern Indiana Broadcasting, Ltd. v. F.C.C.*, 935 F2d 1340, 1342 (DC Cir 1991), states: "[FRCP 32] represents an exception to the hearsay rule; it means that a party cannot properly object to admission of a deposition on the ground that the deponent is absent and that his out-of-court statement is being introduced." *Accord* 8 Wright & Miller, Federal Practice and Procedure: Civil § 2143, at 452-53 (1970) ("Rule 32 * * * creates of its own force an exception to the hearsay rule."). That conclusion is based on the fact that FRE 802 states that "[h]earsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority *or by Act of Congress.*" (Emphasis added.) FRCP 32 is an "other rule," so that hearsay deposition testimony may be admissible under FRCP 32(a), independent of whether it is admissible under FRE 804(a)(5).

OEC 802 similarly provides that "[h]earsay is not admissible except as provided in [OEC 801 to 806] or as otherwise provided by law." ORS 45.250(2)(c), like FRCP 32(a), provides for the admissibility of deposition testimony, independent of OEC 804(1)(e) but otherwise subject to the provisions of the Oregon Evidence Code.

■■ Finally, when two statutes seemingly are in conflict, the more specific statutes controls over the more general statute. *State v. Pearson*, 250 Or 54, 58, 440 P2d 229 (1968). ORS 45.250(2)(c) is more specific than OEC 804(1)(e). To the extent that ORS 45.250(2)(c) conflicts with OEC 804(1)(e), ORS 45.250(2)(c) controls. We hold that, if a party complies with ORS 45.250(2)(c), then the trial court need not decide whether the party also complied with the unavailability requirement of OEC 804(1)(e). We find no error.

In summary, we hold that the OOSHC and OSHA rules were improperly excluded and that the ANSI advisory standards were properly received at trial. We hold that the Court of Appeals erred in ruling that excerpts from Dr. Holland's report were not admissible into evidence. Finally, we hold that the trial court properly allowed plaintiff to read

into evidence portions of the transcripts of the discovery depositions of two witnesses.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is reversed. The case is remanded to the circuit court for further proceedings.

**GILLETTE, J.,** concurring.

I join in the opinion of the court. However, with respect to that portion of the opinion that deals with the OOSHC and OSHA safety rules, I have the following additional observations:

The *holding* in *Shahtout v. Emco Garbage Co.*, 298 Or 598, 695 P2d 897 (1985), may be easy to identify, but its *rationale* is somewhat less clear. The holding is correctly summarized in the lead opinion (317 Or at 385). I set out pertinent portions of *Shahtout* here for convenience:

> "Governmental safety regulations * * * are law. * * * Because they are laws, the question is not whether they are evidence of a fact but rather what bearing they have on the governing standard of conduct.
>
> "* * * * *
>
> "Whether one of [a governmental agency's] safety rules bears on the issue of due care toward a nonemployee depends on the nature of the requirement, the place and circumstances in which it applies, and the type of risk it is meant to prevent. * * *
>
> "In order to decide whether a safety rule should be considered by a factfinder, therefore, a trial court must first determine its purpose and the nature and circumstances of the risk to which the rule is addressed, particularly whether the department contemplated a risk peculiar in nature or gravity to an employee's position in the workplace * * *.
>
> "* * * The role of the rule is not to show what in fact happened nor what experts or others engaged in activities like those that caused the injury consider the proper means to avoid it. If the safety rule is one that may be considered at all under the foregoing test, the jury (or judge) may take this governmentally prescribed safeguard into account in deciding the issue of due care. Plaintiff may argue that the government has adopted the rule as an obligatory safeguard for employees in the kind of situations and against the kind of

risk that led to plaintiff's injury. Defendant, of course, may argue that the safeguard for employees exceeds the ordinary standard of due care considering the nature of the risk and the foreseeability of injury."

298 Or at 604-06.

The rationale for the foregoing needs exploration, because this particular case is not governed by the language of the safety rule. In *Shahtout*, the rule applied to the defendant, but the plaintiff was not a person within the scope of the rule's protection. In this case, plaintiff is a person within the scope of the rule's protection, but the rule does not apply to the defendant. The lead opinion recognizes this distinction in a way, but does little to make the connection between the *Shahtout* rationale and the outcome of this case beyond announcing the latter with a citation to the former.[1] The foregoing notwithstanding, I believe that the rationale of *Shahtout*, when properly understood, does support the result that the lead opinion announces here.

The *Shahtout* rationale is that, because they are laws, safety regulations are like statutes passed by a politically accountable legislative body. Such a legislative body has the power to determine public policy, including the power to declare what standards it deems pertinent to protecting portions of the public from various kinds of harm.

Safety standards set by a legislative body (or by a governmental agency pursuant to authorization from such a body) may be limited in scope, either because (in the case of the legislature) the particular concern that led to the promulgation of the standards was itself limited or because (in the case of the agency) the scope of the agency's authority was limited. Indeed, *Shahtout* is an illustration of the latter case — the rule in question by its terms extended only to workers, because the authority of the promulgating agency extended

---

[1] The lead opinion also appears to rely on a passage from this court's later decision in *Bellikka v. Green*, 306 Or 630, 650-51, 762 P2d 997 (1988). Aside from being difficult to read, however, that passage is *dictum*. It was unnecessary to any discussion of the case, and the principal reason that I declined to join in that portion of the *Bellikka* opinion. *See Bellikka v. Green, supra,* 306 Or at 654 (Gillette, J., concurring in part and specially concurring in part).

only to protecting workers. But such safety standards nonetheless are announcements of public policy that are sufficiently akin to industry standards to permit their use by triers of fact in determining whether a party has met a pertinent standard of care. That is all that plaintiff is asking be done here.

I would hold that legislative or administrative safety standards that are applicable either to a plaintiff or to a defendant may be considered by a jury in determining whether a party has met the appropriate standard of care, subject to any party's right to show, *inter alia*, that the standards exceed (or fall short of) the appropriate rule; that the standards were not known (and, in the exercise of reasonable care, could not have been known) to the party against whom they are offered, that the party against whom they are offered reasonably expected some other party to comply with the standards, and the like.

With that additional explanation, I join in the court's holding that plaintiff was entitled to have the trier of fact informed as to the provisions of the OOSHC and OSHA rules.