Nikolay N. NIKOLOV; Gabriela N. Vladimirova, Plaintiffs–Appellants,

v.

ASSOCIATED ENVIRONMENTAL SERVICES, a partnership; Kevin M. Wilkerson; James Lacher, partners, associated & in business under the common name & style of such company, Defendants–Appellees.

No. 00–35635.
D.C. No. CV–99–00141–AS.

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 4, 2002.*

Decided Dec. 11, 2002.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

---

Before REAVLEY,[**] KOZINSKI, and W. FLETCHER, Circuit Judges.

## MEMORANDUM[***]

Plaintiffs–Appellants Nikolay N. Nioklov, individually and as personal representative of the estate of Nicola Nikolov, and Gabriela N. Vladimirova ("the Nikolovs") appeal the district court's award of summary judgment for Associated Environmental Services and two of its principals, Kevin M. Wilkerson and James Lacher (collectively "AES"). We affirm.

As our subject matter jurisdiction is based on diversity of citizenship, state substantive law controls. *See Torre v. Brickey*, 278 F.3d 917, 919 (9th Cir.2002). The district court's ruling on a summary judgment motion is reviewed de novo. *See Martinez v. Signature Seafoods, Inc.*, 303 F.3d 1132, 1134 (9th Cir.2002).

There was no written contract between Nicola and AES, the two having only reached a verbal agreement on the terms of the testing. Deciding what was agreed upon by parties to an oral contract is a question of fact. *See Howland v. Iron Fireman Mfg. Co.*, 188 Or. 230, 213 P.2d 177, 199 (1949). The Nikolovs, as the proponents of the oral contract in this case, must establish the contract's terms by a preponderance of the evidence. *See Bernard v. Vatheuer*, 303 Or. 410, 737 P.2d 128, 131 (1987). As the magistrate judge noted, "[t]he portions of the record relating to the period before the test [are] devoid of evidence tending to establish the parameters of the testing procedure." Phat Hotan, the station's previous owner, testified that he thought testing of the tanks would include checking the product lines, and that Wilkerson never said anything to him about not testing the lines. But Hotan gave no testimony regarding the terms of AES's agreement with Nicola. Ordinarily, whether an oral contract is sufficiently definite to be enforceable is a question best left for resolution until after the case has been fully heard. *See Clifford v. Hauskins*, 61 Or.App. 307, 656 P.2d 962, 963 (1983). In this case, however, the Nikolovs have failed to offer any evidence tending to prove the terms of AES's promised performance. We therefore conclude that the district court did not err in granting summary judgment on the Nikolovs' breach of contract claim.

■ The Nikolovs allege that AES was negligent in two ways: for failing to test the product lines, and for using the wrong standard for detecting leakage from the tanks. To sustain either claim, the Nikolovs must show AES breached a duty of care independent of its contractual obli-

---

[**] The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

[***] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9TH CIR. R. 36–3.

gations. *See Georgetown Realty, Inc. v. Home Ins. Co.*, 313 Or. 97, 831 P.2d 7, 12–13 (1992). The magistrate judge found that the Nikolovs "failed to present evidence of what the industry standards were or that the industry standards required Defendants to perform product line tests as a matter of course." Such industry standards can be helpful in establishing the appropriate standard of care. *See Hansen v. Abrasive Eng'g & Mfg.*, 317 Or. 378, 856 P.2d 625, 628 (1993). On appeal, the Nikolovs have again failed to identify any evidence of industry custom, and have not otherwise illuminated the standard of care a reasonable person in AES's position would have exercised with respect to the product lines.

■ Regarding the appropriate leakage rate for tank tightness, AES represented in its "Final Report" that it was using the "National Fire Protection Assoc. criteria for a tight tank system." AES also showed that the NFPA's tightness standards met or exceeded the Environmental Protection Agency's requirements. Compliance with industry norms and regulatory minimums strongly suggests that AES's conduct met the appropriate standard of care. *See Hansen*, 856 P.2d at 628–30. The Nikolovs rely on a report by an employee of the company that developed the testing protocol AES used on Nicola's filling station. In that report, the employee opined that the maximum leakage rate for reporting a tank as "tight" is less than the rate AES used. This report perhaps constitutes some evidence that AES should have reported that at least one of the tank systems was leaking. Regardless, the record shows that the source of the contamination was the product lines, not the tanks. Therefore, any breach in the standard of care for reporting tank tightness was not the cause of the damages of which the Nikolovs complain.

■ Lastly, the Nikolovs claim that AES negligently misrepresented that it had tested the product lines and that the tanks were free of leaks. To the extent the Nikolovs are arguing that AES's representation that the tanks were "tight" suggests that they were free of seepage, that argument has no merit. In its Final Report, AES noted that two of the tank systems were indeed leaking small quantities of gasoline. Certifying the tanks as "tight" does not mean there was no leakage at all, as AES's report to Nicola made clear.

The Final Report also describes the "tank systems test results." The Nikolovs argue that the use of the term "tank system" tends to suggest more than just the tanks are tested for leakage. This interpretation accords with Wilkerson's answer to an interrogatory, in which he said that "[t]he phrase 'tank system' means the tank and lines are tested as one system." At the same time, the Final Report seems to indicate that the product lines were not tested. The Final Report has a place for reporting the "product line test results." The place for reporting the "tank system results" was completed with respect to each tank system, but nothing is shown for the product lines. This omission of data accords with Wilkerson's claim that he told Nicola and Hotan that AES was not going to test the product lines.

Having viewed all of AES's statements together, we conclude that a reasonable juror could not find that AES represented that it had tested the product lines, especially in light of Wilkerson's unequivocal statement that AES was not going to test

them.[1] We therefore affirm the district court's award of summary judgment on the Nikolovs' negligent misrepresentation claim.

The judgment of the district court is AFFIRMED. Having determined that AES is entitled to judgment as a matter of law on all claims, we do not decide whether the Nikolovs would have been entitled to contribution under Oregon law.

---

1. The Nikolovs also point to a "comment" that appears at the end of the "Tank Status Evaluation Report," which in part reads: "Plus Unl. tanks are manifolded—testing as 1 tank system. All product lines have check valves under the pumps, to be tested with tank system." To the Nikolovs, the phrase "to be tested" refers to "product lines." We find this interpretation implausible. A more natural interpretation of this passage would have "to be tested" modifying the phrase it is most near—"check valves under the pumps."